# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

CARDINAL MINERALS, LLC,

Plaintiff-Appellant,

v.

SUSAN B. BLATT et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case Nos. 24 MO 0008, 24 MO 0009,
24 MO 0011, 24 MO 0012

---

Civil Appeals from the
Court of Common Pleas of Monroe County, Ohio
Case No. CV 2022-104

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed in part, Reversed in part, Remanded.

---

*Atty. Sara E. Fanning, Atty. Michelle F. Noureddine, Atty. David J. Wigham,* Roetzel & Andress, LPA for Appellant-Plaintiff and

*Atty. Andrew G. Jenkins* (pro hac vice), Jenkins Legal Group and *Atty. Alexander T. McElroy,* McElroy Law Firm, LLC for Defendant-Appellant Vine Royalty, LP and

*Atty. Daniel H. Binegar*, for Defendants-Appellees Susan Blatt, Robert Binegar, Julie Binegar, Jennifer Butler, John Butler, Daniel Binegar and *Atty. Paul N. Garinger, Atty.*

*Kristopher J. Armstrong,* Barnes & Thornburg, LLP, and *Atty. Craig E. Sweeney, Atty. Zachary D. Eddy,* Taft, Stettinius & Hollister LLP for Defendants-Appellees SWN Production Company, LLC and IOG Resources, LLC and *Atty. Molly Johnson,* Johnson & Johnson Law Firm, for Defendant-Appellee Gateway Royalty V, LLC.

Dated:  March 31, 2025

---

**Robb, P.J.**

{¶1}   This case consists of four consolidated appeals.[1]  The first appeal was filed by Appellant/Plaintiff, Cardinal Minerals, LLC (Cardinal).  Cardinal appeals the June 17, 2024 judgment granting summary judgment in favor of the Appellees/Defendants, SWN Production (Ohio), LLC, and IOG Resources, LLC, (collectively SWN/IOG), the Binegar Heirs, and the Binegar Assigns.

{¶2}   Among other arguments, Cardinal claims the trial court erred by finding it lacked standing to raise its claims.  Cardinal challenges our prior decisions in *Cardinal Minerals, LLC v. Menno D. Miller,* 2024-Ohio-2133 (7th Dist.), *appeal not allowed sub nom. Cardinal Minerals, L.L.C. v. Miller,* 2024-Ohio-5104 *("Cardinal I"),* and *Cardinal Minerals, LLC v. Joseph M. Miller*, 2024-Ohio-3121 (7th Dist.), *appeal not allowed sub nom. Cardinal Minerals, L.L.C. v. Miller*, 2024-Ohio-5340 ("Cardinal II"), collectively "the Cardinal cases," as wrongly decided.

{¶3}   Cross-Appellants/Defendants, Susan Blatt, Robert Binegar, Julie Binegar, Jennifer Butler, John Butler, and Daniel Binegar (collectively the Binegar Heirs), also appeal the June 17, 2024 judgment granting summary judgment.  The Binegar Heirs argue the trial court erred by granting summary judgment in favor of SWN/IOG on the Binegar Heirs' cross-claim for declaratory judgment.  They claim their lease agreements with SWN/IOG required SWN/IOG to continue to pay royalties relating to undisputed portions of mineral interests during the underlying litigation.  The Binegar Heirs also claim the trial court erred by determining SWN/IOG was permitted to obtain a refund of prior royalty payments when paid in error.

{¶4}   Regarding Cardinal, the Binegar Heirs contend the trial court abused its discretion by failing to award their reasonable expenses and attorney's fees incurred

---

[1] Originally there were five consolidated appeals.  One was settled and dismissed.

Case Nos. 24 MO 0008, 24 MO 0009, 24 MO 0011, 24 MO 0012

prosecuting their motion to compel Cardinal's complete discovery responses and defending Cardinal's motion to disqualify their attorney.

{¶5} Cross-Appellants/Defendants, Gateway Royalty V, LLC and Vine Royalty, L.P. (collectively the Binegar Assigns), separately appeal the trial court's June 17, 2024 decision. The Binegar Assigns filed a joint brief and contend the trial court erred by granting SWN/IOG summary judgment. Like the Binegar Heirs, the Binegar Assigns claim the court erred by holding SWN/IOG was not in breach of the oil and gas leases. They contend SWN/IOG was not authorized to withhold royalties during this litigation that were associated with the undisputed half of the mineral rights.

{¶6} For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

Statement of the Facts and Case

{¶7} The relevant facts include the following. Cardinal filed its initial complaint in March 2022 and named 11 defendants, Susan Blatt, Robert Binegar, Jr., Julie Ann Binegar, Jennifer Butler, Daniel H. Binegar, Lee Bramble Tomolonis, Vine Royalty, L.P., Gateway Royalty V, LLC, SWN Production (Ohio), LLC, and IOG Resources, LLC, and asserted seven claims for relief. (March 18, 2022 Complaint.)

{¶8} Among other claims, Cardinal sought to quiet title to one-half the mineral interest underlying approximately 65 acres located in Monroe County. Cardinal alleged it became the owner of 8/9 of the oil and gas rights, referred to as the Tomolonis Interest, in 2021 via several quitclaim deeds. Cardinal claimed the remaining 1/9 of the Tomolonis Interest was owned by Lee Bramble Tomolonis.[2]

{¶9} Cardinal claims the Binegar Heirs' and Binegar Assigns' predecessor in interest, Robert P. Binegar, attempted to abandon the Tomolonis Interest. Cardinal claims Robert P. Binegar failed to employ reasonable diligence in his search to locate the holders of the Tomolonis Interest before publishing notice of intent to abandon. Cardinal contends a reasonably diligent search would have revealed that Peter and Elsie Tomolonis lived in Belmont County since the Tomolonis deed was signed in that county, and a search of Belmont County records would have revealed the names and locations

---

[2] Lee Bramble Tomolonis filed the fifth appeal, which was consolidated herein. We do not address his claims or arguments because his appeal was dismissed.

of the Peter Tomolonis' heirs. Thus, Cardinal claims Binegar failed to serve the notice of intent to abandon via certified mail as required, and as such, he failed to properly abandon the interest, which thus never vested in him. Robert P. Binegar subsequently attempted to lease 100% of the oil and gas rights underlying the property to Eclipse Resources, I, LP, in January of 2013 before he died intestate. Eclipse Resources, I, LP is now SWN. SWN assigned an interest to another company, who then assigned its interest to IOG. Cardinal claims SWN has unlawfully drilled and purportedly utilized a majority of the property. (March 18, 2022 Complaint.)

{¶10} The Binegar Heirs filed an answer. They counterclaimed against Cardinal for quiet title and filed a cross-claim against SWN. They claimed SWN ceased payment of royalties pending the litigation; sought the court to determine SWN was contractually required to pay uncontested royalties during litigation; asked the court to determine SWN was required to indemnify and defend them in the lawsuit filed by Cardinal; and sought a determination that SWN is not entitled to a refund of money already paid under the oil and gas lease. The lease is attached to their counterclaim as Exhibit 2. (May 25, 2022 Answer, Counterclaim & Cross-Claim.)

{¶11} The Binegar Assigns (Vine and Gateway) also filed counterclaims and cross-claims. Vine counterclaimed against Cardinal for quiet title and declaratory judgment. It asked the trial court to determine that Cardinal's challenge to the abandonment of the Tomolonis Interest fails and to declare Vine's title is superior. (June 6, 2022 Answer & Counterclaim.) Gateway also filed a counterclaim and cross-claim. (June 21, 2022 Answer, Counterclaim & Cross-Claim.)

{¶12} Cardinal moved to disqualify Attorney Binegar as counsel of record for himself and others since he was going to be called as a witness in the case. (February 9, 2023 Motion.) The Binegar Heirs opposed the motion to disqualify, and they also moved the court to find Cardinal's motion was frivolous and asked for an award of attorney's fees and costs incurred as a result. (February 22, 2023 Motion & Memorandum in Opposition.) The trial court denied Cardinal's motion to disqualify Attorney Binegar. (March 21, 2023 Judgment.) It also denied the motion for frivolous conduct. (April 20, 2023 Judgment.)

{¶13} Nearly one year after its initial complaint, Cardinal filed its first amended complaint with leave of court. Cardinal named the same 11 defendants and set forth ten claims for relief. Cardinal's first claim sought declaratory judgment that the abandonment under the Dormant Mineral Act was deficient since Robert P. Binegar did not employ reasonable diligence in searching for the holders of the Tomolonis Interest and failed to serve them via certified mail. Thus, Cardinal alleged the Tomolonis abandonment was legally deficient and consequently the Binegar deeds were null and void and were incapable of conveying the Tomolonis interest. (March 27, 2023 First Amended Complaint.)

{¶14} Cardinal's second claim for relief sought quiet title to the Tomolonis Interest in its name and against the claims of the defendants, their successors, and assigns. (March 27, 2023 First Amended Complaint.)

{¶15} Cardinal's third claim for relief sought declaratory judgment that the Binegar leases are null and void since they purport to encumber the Tomolonis Interest. Cardinal's fourth count seeks to quiet title as to any claims made by SWN/IOG, and the Binegar Heirs and Binegar Assigns regarding the Tomolonis Interest and any appurtenant oil and gas rights.

{¶16} Cardinal's fifth claim asserts the drilling operations conducted by SWN/IOG constitute illegal trespassing on the Tomolonis Interest. Cardinal sought damages, attorney's fees, costs, and punitive damages. Cardinal's sixth claim asserts SWN and IOG intentionally converted the oil and gas produced from the Tomolonis Interest and that Cardinal is entitled to recover for conversion. (March 27, 2023 First Amended Complaint.)

{¶17} Cardinal's seventh claim for relief alleges waste and sought a permanent injunction against SWN/IOG in the alternative to its counts five and six, trespass and conversion. Cardinal sought to enjoin SWN/IOG from further drilling operations or related activities. In count seven, Cardinal sought damages resulting from the waste from SWN/IOG. (March 27, 2023 First Amended Complaint.)

{¶18} Cardinal's tenth claim for relief seeks an accounting of rents and profits. It also claims unjust enrichment and asked for damages and lost profits flowing from the Tomolonis Interest, including but not limited to, royalties, gross proceeds, signing bonuses, interest, costs, and attorney's fees. (March 27, 2023 First Amended Complaint.)

**{¶19}** Lee Bramble Tomolonis filed an answer to the amended complaint and first amended cross-claims. Tomolonis' claims mirror Cardinal's. He sought declaratory judgment and quiet title of his portion of the Tomolonis Interest in his favor. (Answer & Cross-Claim.)

**{¶20}** Gateway also filed claims for breach of contract, bad faith, breach of the Binegar lease, and unjust enrichment against SWN/IOG. (August 14, 2023 Answer & Cross-Claim.) Gateway amended its cross-claim against SWN/IOG and sought a permanent injunction.

**{¶21}** Vine also filed an answer to Cardinal's amended complaint and counterclaimed for quiet title. Additionally, Vine cross-claimed against SWN/IOG for breach of contract based on their improper withholding of royalty payments. (August 14, 2023 Answer, Counterclaim & Cross-Claim.)

**{¶22}** The Binegar Heirs and Binegar Assigns sought declaratory judgment and claimed SWN/IOG breached the lease agreement by stopping all royalty payments as a result of this litigation, despite the fact that this litigation only challenged one-half of the mineral rights underlying the property.

**{¶23}** After the conclusion of discovery and the trial court's denial of several motions to dismiss, the parties filed competing motions for summary judgment. The trial court found against Cardinal on all claims and in favor of SWN and IOG on all claims.

**{¶24}** More specifically, the trial court held in part Cardinal lacked standing for two reasons and Cardinal's purported purchase of 8/9 of the Tomolonis Interest (which had previously been abandoned more than eight years before) was for the sole purpose of pursuing litigation. The court found Cardinal lacked standing based on R.C. 5301.56 and that to set aside a performed abandonment, "one or more 'holders' under the definition contained in R.C. 5301.56(A)(1) must actually institute a litigious action to set aside the performed abandonment." (June 17, 2024 Judgment.) The court explained, "[i]n other words, the heirs, successors, or assigns of Peter and Elsie Tomolonis, including Lee Bramble Tomolonis in this case, do not require a recorded document to be classified as a 'holder' under the statute. That is not the case for [Cardinal.]" (June 17, 2024 Judgment.)

Case Nos. 24 MO 0008, 24 MO 0009, 24 MO 0011, 24 MO 0012

**{¶25}** The court found because Cardinal sought to obtain an interest that did not exist in the record absent a lawsuit, Cardinal was "not legally permitted to acquire the Tomolonis Interest, because the public record indicates that said interest was abandoned." Thus, it found Cardinal's attempted acquisition of this interest was in contravention to R.C. 5301.56(H)(2). The trial court found Cardinal did not acquire any interest via the quitclaim transactions since the Tomolonis heirs did not own any interest at the time. (June 17, 2024 Judgment.)

**{¶26}** Further, relying on the prior "Cardinal cases," the trial court found Cardinal lacked standing based on the doctrines of champerty and maintenance. It emphasized Cardinal was created with the purpose of purchasing "publication-only abandonments with the hope of drumming up litigation." Thus, the trial court granted summary judgment in favor of SWN/IOG, the Binegar Heirs, and Binegar Assigns on all counts in Cardinal's first amended complaint. It denied Cardinal's motion for partial summary judgment. (June 17, 2024 Judgment.)

**{¶27}** The trial court disagreed the abandonment was improper, such that the Binegar Heirs and Binegar Assigns only acquired 50% of the oil and gas rights underlying the property. Instead, the trial court held Robert P. Binegar was 100% owner of the oil and gas rights when executing the lease with Eclipse. Thus, when he passed away intestate, he left his heirs a 100% interest, not the 50% alleged by Cardinal and Lee Bramble Tomolonis. (June 17, 2024 Judgment.)

**{¶28}** As for the cross-claims regarding the lease agreements, the court noted there was no dispute about the existence of a valid lease agreement. Instead, the parties disagreed whether SWN/IOG were contractually authorized to suspend all royalty payments otherwise due to the Binegar Heirs and Binegar Assigns in light of the pending litigation. The Binegar Heirs and Binegar Assigns claimed the contract required SWN/IOG to continue to make payments associated with the uncontested 50% interest. Whereas, SWN/IOG withheld all of the royalties due and owed to the lessors, even though there was no dispute over the ownership of 50%. The trial court concluded the plain terms of the lease allowed the suspension of all royalty payments to guard against the potential overpayment to the Binegar Heirs and Binegar Assigns. (June 17, 2024 Judgment.)

**{¶29}** The trial court also disagreed that SWN/IOG's alleged failure to place the disputed funds in escrow constitutes a breach. Instead, the court noted the parties, via an agreed judgment dated April 9, 2024, agreed to establish an escrow fund for the suspended funds. Thus, the court found there was no breach, and if there were a breach in this regard, the breach was "not properly noticed by the Binegar Assigns" and "has been wholly and completely remedied by SWN and IOG, such that the Binegar Assigns are not damaged." Thus, the trial court found the Binegar Heirs' cross-claims for breach of contract lack merit. (June 17, 2024 Judgment.)

**{¶30}** The court also found Gateway's cross-claims for unjust enrichment and conversion fail on the merits. As for the Binegar Heirs' claims for declaratory judgment, the court also found there was no contractual right for SWN/IOG to indemnify and defend the Binegar Heirs in this litigation. (June 17, 2024 Judgment.)

<u>Summary Judgment Standard of Review</u>

**{¶31}** We review awards of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civil Rule 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶32}** The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material facts concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). The moving party must support the motion by pointing to some evidence in the record of the type listed in Civil Rule 56(C). *Id.* at 292-293. If the moving party satisfies its burden, the non-moving party has the reciprocal burden to demonstrate that a genuine issue of fact remains for trial. *Id.* at 293. The non-moving party may not rest on allegations or

Case Nos. 24 MO 0008, 24 MO 0009, 24 MO 0011, 24 MO 0012

denials in her pleadings, but must point to or submit evidence of the type specified in Civil Rule 56(C). *Id.*; Civ.R. 56(E).

<u>Cardinal Mineral's Assignment of Error</u>

**{¶33}** Cardinal's sole assignment of error states:

"The trial court erred as a matter of law when it granted summary judgment to Appellees on all counts in Appellant's complaint and did not grant summary judgment to Appellant on the title counts in its complaint."

**{¶34}** Cardinal claims we should depart from our holdings in the prior "Cardinal cases." It contends the contract defenses of champerty and maintenance do not bar its claims. Cardinal also asserts they were quit-claimed standing to assert the claims made. Cardinal contends the Binegar Heirs' and Binegar Assigns' predecessor in interest failed to use reasonable diligence when searching for the holders of the mineral interests, and as such, the abandonment is void.

**{¶35}** Cardinal claims we should reverse our prior "Cardinal cases" based on *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, which reversed the decision in *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660 (1999). We disagree. The Supreme Court in *Galatis* held:

> [I]n Ohio, a prior decision . . . may be overruled where (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it.

*Id.* at ¶ 48.

**{¶36}** Cardinal urges us to reject our prior "Cardinal cases" as wrongly decided. Cardinal contends we confused the concepts of champerty and maintenance and erroneously held Ohio law prohibits the assignment of real property, including claims arising from that property, via quitclaim deed. Cardinal alleges Ohio law has long permitted the assignment of causes of action, and our prior application of the doctrines of champerty and maintenance based on this misunderstanding is erroneous.

**{¶37}** Cardinal contends the difference between actual champerty and our prior applications of the doctrine in the "Cardinal cases" is simple. Cardinal asserts the

doctrines do not apply to someone with an actual interest in the property underlying the litigation, like them, versus someone who is funding or incentivizing the litigation of another. *See Rancman v. Interim Settlement Funding Corp.*, 2003-Ohio-2721 (holding litigation funding agreements are void as champertous).

**{¶38}** However, as pointed out by the trial court, we relied on the doctrines of champerty and maintenance, in addition to R.C. 5301.56(H). We found Cardinal sought out the property interests for the purpose of pursuing litigation despite the fact that abandonment was evident from the public record. We distinguished cases in which the mineral holders first sought a judicial declaration that the mineral interest had not properly been abandoned before there was a purported record transfer. *Cardinal I* at ¶ 32. Because Cardinal had accepted transfers of interests which did not exist in the public record, it did not acquire an interest and could not constitute a holder as that term is defined. Consequently, we found Cardinal suffered no injury. *Id.* at ¶ 39-41.

**{¶39}** Before a court can consider the merits of a legal claim, the person seeking relief must establish standing to sue. *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27. A party must have a personal stake in the outcome of the controversy to make a legal claim or seek judicial enforcement of a duty or right. *Moore v. Middletown*, 2012-Ohio-3897, ¶ 21. A plaintiff must demonstrate he suffered an injury caused by the defendant or traceable to the alleged conduct of the defendant, and the injury should have a legal or equitable remedy. *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992).

**{¶40}** The facts here are nearly identical to those in the prior "Cardinal cases." Robert P. Binegar undertook the steps to abandon the disputed one-half of the oil and gas rights pursuant to the Dormant Mineral Act. The notice of abandonment was sent to the county recorder in June of 2012, and the record noted the one-half mineral interest had been abandoned on the 1959 reservation deed. Robert P. Binegar subsequently executed an oil and gas lease with Eclipse. He died a year later, and his property was distributed in equal shares to his five children. Two of his heirs conveyed their share to others. (Feb. 20, 2024 Joint Motion for Summary Judgment, Exhibits A-16, A-18 & A-19.)

**{¶41}** Cardinal purchased 8/9 of the Tomolonis Interest in 2021. Cardinal was aware of the abandonment process and aware there were wells on the property when it

purchased the purported mineral rights in 2021 via quitclaim deeds. The Tomolonis heirs and assigns were not record owners at the time. (March 27, 2023 First Amended Complaint Exhibits 13-20.)

**{¶42}** Thus, Cardinal purchased the right to pursue litigation to set aside the abandonment undertaken almost nine years before. Consequently, as in the prior "Cardinal cases," when the Tomolonis heirs conveyed their mineral interests to Cardinal, they had nothing to quitclaim because they did not own anything of record. *Cardinal Minerals, LLC v. Miller*, 2024-Ohio-2133, ¶ 29 (7th Dist.) (applying R.C. 5301.56(H)(2)(c) and finding no interest in real property was conveyed to Cardinal since the heirs did not own anything of record).

**{¶43}** We adhere to our prior "Cardinal cases" since we are bound by our precedent. *Keytack v. Warren*, 2006-Ohio-5179, ¶ 51 (11th Dist.); *accord Estate of Aukland v. Broadview NH, LLC*, 2017-Ohio-5602, ¶ 21 (10th Dist.). We agree that Cardinal lacked standing to challenge the abandonment based on these facts and conclude the prior *Cardinal* decisions were not wrongly decided. Thus, assuming the *Galatis* test applies here, the first prong of the *Galatis* test fails.

**{¶44}** Accordingly, we decline to address Cardinal's arguments about the sufficiency of the Binegar abandonment process and note the legislature may consider time limitations on lack of due diligence challenges since mineral developers are indefinitely at risk. Cardinal's sole assigned error lacks merit.

### Attorney's Fees & Expenses

**{¶45}** The Binegar Heirs' second assigned error asserts:

"The trial court abused its discretion by denying the motions for reasonable expenses, including attorney fees, filed by Cross-Appellants Blatt."

**{¶46}** Cardinal asks this court to reject this assignment of error since the Binegar Heirs did not appeal the December 12, 2022 and April 20, 2023 judgments or otherwise indicate in their notice of appeal or docketing statement they were appealing from these decisions. Cardinal claims prejudice as a result, but does not identify how it was prejudiced other than the delay in receiving notice. Notwithstanding the claimed prejudice, Cardinal has had the opportunity to brief and oppose these arguments, and as such, we address the merits.

Case Nos. 24 MO 0008, 24 MO 0009, 24 MO 0011, 24 MO 0012

**{¶47}** Ohio follows the American Rule which dictates that each party to a lawsuit generally bears its own costs and attorney's fees. *Krasny-Kaplan Corp. v. Flo-Tork, Inc.,* 66 Ohio St.3d 75 (1993); *State ex rel. Varnau v. Wenninger,* 2012-Ohio-224, ¶ 23. Absent express statutory authority or bad faith, an award of attorney's fees is improper. *Id.* Exceptions to the American Rule should be narrowly construed. *Dolan v. Glouster*, 2014-Ohio-2017, ¶ 113 (4th Dist.); *Columbus Check Cashers, Inc. v. Rodgers*, 2008-Ohio-5498, ¶ 13 (10th Dist.) (statutes in derogation of common law must be strictly construed).

**{¶48}** This assignment is comprised of two parts. First, the Binegar Heirs claim because their motion to compel was granted and the court did not make certain findings, the court was required to award its request for associated expenses and attorney fees under Civ.R. 37(A)(5)(a), which states:

(5) *Payment of Expenses; Protective Orders.*

(a) If the Motion Is Granted. If the motion is granted, the court *shall*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court shall not order this payment if:

(i) The movant filed the motion before attempting in good faith to obtain the discovery without court action;

(ii) The opposing party's response or objection was substantially justified; or

(iii) Other circumstances make an award of expenses unjust.

(Emphasis added.)

**{¶49}** "[U]nder Civ.R. 37(D), the imposition of attorney fees for failure to timely provide discovery is mandatory unless the court makes an express finding the withholding of discovery was justified or that an award would be unjust." *Shikner v. S & P Sols.*, 2006-Ohio-1339, ¶ 14 (8th Dist.), citing *Soloman v. Excel Marketing*, 114 Ohio App.3d 20, 28 (1996); *accord Bernard v. Bernard*, 2002-Ohio-552, *4 (7th Dist.) ("Absent an express finding that the failure to comply was substantially justified or that other circumstances

Case Nos. 24 MO 0008, 24 MO 0009, 24 MO 0011, 24 MO 0012

would make an award unjust, the trial court must grant a party's request for reasonable expenses.").

**{¶50}** Where the trial court grants the motion to compel and fails to make the findings required by the rule, awarding expenses and attorney's fees is required. *Shikner; accord Carpenter v. United Ohio Ins. Co.*, 1997 WL 232727, *4 (3rd Dist. May 9, 1997). A finding of frivolousness is not required. *Rardin v. The Salon Professional Academy, LLC*, 2017-Ohio-410, ¶ 20 (6th Dist.).

**{¶51}** The Binegar Heirs moved to compel Cardinal to respond to certain interrogatories and requests for production of documents in September of 2022. For cause, the Binegar Heirs claimed Cardinal failed to respond to six interrogatories and eleven requests for production. Cardinal had objected and argued the information was irrelevant. Counsel exchanged emails about the supplemental responses, and counsel for Cardinal indicated in response that discovery requests which "seek information about Cardinal and its acquisition of the Tomolonis Interest . . . will not affect the outcome of this litigation . . . and thus, are not relevant" to the claims or defenses. Instead, counsel said "the only dispute at issue in this case is whether . . . Robert Binegar successfully abandoned the Tomolonis Interest under the DMA." Thus, Cardinal refused to provide the requested discovery. (September 29, 2022 Motion to Compel, Exhibit 4.)

**{¶52}** Cardinal opposed the motion and moved for a protective order. Cardinal alleged its purpose in acquiring the Tomolonis Interest and Cardinal's related communications with the Tomolonis heirs were irrelevant to any claims or defenses in the case. Cardinal claimed that because the defenses of champerty and maintenance do not apply to these facts, the Binegar Heirs were not entitled to this information. (October 13, 2022 Opposition to Motion to Compel & Motion for Protective Order.) Cardinal further argued its business research and development was confidential and public disclosure of this information would cause it serious injury. (October 26, 2022 Reply in Support of Protective Order.)

**{¶53}** The trial court summarily granted the motion to compel and denied the requested protective order. The court stated, "for good cause shown, Defendants Blatt's Motion to Compel is granted. This Court . . . orders Plaintiff to fully and completely

supplement its discovery responses on or before December 23, 2022. . . . Plaintiff's motion for Protective Order is denied." (December 12, 2022 Judgment.)

{¶54} Cardinal urges us to find the trial court exercised its discretion and chose not to award attorney's fees since it found the stated reasons in Cardinal's opposition and motion for protective order reasonably warranted Cardinal's discovery objections. Thus, Cardinal urges us to affirm the court's discretionary decision in this regard. While the trial court could have made the findings suggested by Cardinal, it did not, and in the absence of the statutorily required findings, the trial court erred by not awarding the Binegar Heirs' reasonable expenses.

{¶55} Accordingly, we reverse this aspect of the trial court's decision and remand the matter to the trial court to either make the requisite findings for denying the motion for attorney fees, or alternatively, to require Cardinal "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Civ.R. 37(A)(5)(a). This aspect of the Binegar Heirs' second assigned error has merit.

{¶56} The second aspect of this assigned error contends the trial court abused its discretion by failing to award the Binegar Heirs' reasonable expenses and attorney's fees incurred in defending Cardinal's allegedly frivolous motion to disqualify their attorney.

{¶57} The Binegar Heirs claim that ten months after the litigation was initiated and six days before depositions were scheduled, Cardinal moved to disqualify the Binegar Heirs' counsel of record. They claim Cardinal did not identify a logical argument in support of their motion to disqualify and cited only Prof.Cond.R. 3.7(a). The Binegar Heirs further claim the motion to disqualify was prematurely filed before their attorney was deposed and failed to explain Cardinal's efforts to otherwise secure the information. They claim Cardinal eventually deposed their attorney, but this occurred 50 days after the motion to disqualify was filed. Because motions to disqualify should be filed when it is obvious counsel will be called as a witness, not to determine whether the attorney will be called as a witness, the Binegar Heirs urge us to find the trial court abused its discretion.

{¶58} Cardinal's motion to disqualify was filed February 9, 2023. It alleges in part that to defend the alleged champerty and maintenance allegation, they will need to cross-examine Attorney Binegar about his correspondence with Cardinal's predecessors in interest, as well as his research and investigation into the abandonment of the mineral

interests. They allege his testimony will be necessary based on his personal knowledge and interactions. Cardinal also suggested Attorney Binegar was attempting to avoid being deposed. (February 9, 2023 Motion to Disqualify.)

{¶59} Cardinal's reply in support of its motion contends Attorney Binegar communicated with two Tomolonis heirs, and because he will be a necessary witness, he must be disqualified as counsel of record. (March 1, 2023 Reply in Support.)

{¶60} The Binegar Heirs opposed the motion to disqualify, contending that Cardinal's motion to disqualify Attorney Binegar sought to obtain information from him that Cardinal already had and was a guise to harass them and delay the proceedings. Additionally, the Binegar Heirs claimed the motion lacked merit under Prof.Cond.R. 3.7 since it was prematurely filed; failed to identify what material and personal knowledge Attorney Binegar had to the case; and because Cardinal failed to explain any efforts it made to secure the information via other witnesses or less intrusive discovery. (February 22, 2023 Opposition.)

{¶61} The trial court overruled the motion to disqualify without making any findings. (March 21, 2023 Judgment.)

{¶62} The Binegar Heirs subsequently moved for an award of attorney's fees and expenses. They claimed Cardinal had no idea whether Attorney Binegar had any personal knowledge that would make him a necessary witness at trial, and as such, the motion was wholly speculative. Thus, they alleged no reasonable attorney would have filed a motion to disqualify under these circumstances and the filing was frivolous and contrary to Civ.R. 11 and R.C. 2323.51. (April 11, 2023 Reply in Support.)

{¶63} The trial court denied their motion for attorney's fees and expenses. It found Cardinal did not engage in frivolous conduct nor did it willfully violate Civ.R. 11. (April 20, 2023 Judgment.)

{¶64} R.C. 2323.51(A) states in part:

(2) "Frivolous conduct" means either of the following:

(a) Conduct of . . . [a] party to a civil action, . . . or of the . . . other party's counsel of record that satisfies any of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action . . . or is for another improper purpose, including, but not

limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

**{¶65}** Before a court may subject an attorney to Civ.R. 11 sanctions, the lawyer must have willfully violated the rule by filing a pleading that to the best of her knowledge, information, and belief, was not supported by good grounds or was filed for purpose of delay. *Haubeil & Sons Asphalt & Materials, Inc. v. Brewer & Brewer Sons, Inc.*, 57 Ohio App.3d 22 (4th Dist.1989); *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 2010-Ohio-5073, ¶ 8. Civ.R. 11 uses a subjective bad faith standard that requires all violations to be willful. *Id.* Bad faith is not just bad judgment or negligence. *Id.* Bad faith "imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud." (Citations and quotations omitted.) *Id.*

**{¶66}** Unlike Civ.R. 11, frivolous conduct under R.C. 2323.51(A) invokes an objective standard. *State ex rel. DiFranco v. S. Euclid*, 2015-Ohio-4915, ¶ 15. A finding of frivolousness requires more than prevailing on the legal merits; it requires egregious and unjustifiable conduct. *Id.* Thus, the applicable test is whether no reasonable lawyer would have argued the claim in light of the existing law. *Id.* Merely winning a legal battle is not enough to invoke R.C. 2323.51 sanctions; this statute must be carefully applied to avoid chilling legitimate claims. *Ohio Edison Co. v. Cubick*, 2020-Ohio-7027, ¶ 21 (7th Dist.).

**{¶67}** "The standard of review employed by an appellate court when reviewing rulings on R.C. 2323.51 motions varies and is contingent upon the basis for the trial court's decision." *Harris v. Rossi*, 2018-Ohio-4573, ¶ 75 (11th Dist.). We review purely legal issues, such as if an attorney's conduct is warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, without deference to the trial court's decision. *Lable & Co. v. Flowers*, 104 Ohio App.3d 227, 233 (9th Dist.1995); *Cubick* at ¶ 20 (whether a claim is warranted under existing law is a legal issue reviewed de novo). This de novo standard likewise governs our review of a court's award under Civ.R. 11 for the same reason. *Id.*; *Burns v. Henne*, 115 Ohio App.3d 297, 302 (2d Dist.1996).

**{¶68}** Here, the Binegar Heirs reiterate their arguments raised to the trial court. They claim the motion to disqualify lacked a substantive basis, was based on speculation, and was grossly premature. They claim it was designed to harass and that after the motion was filed and Attorney Binegar was finally deposed, his testimony did not establish grounds for disqualifying him.

**{¶69}** Cardinal, on the other hand, claims Attorney Binegar's testimony about his investigation into the Tomolonis Interest was necessary, relevant, and admissible because it pertained to the Binegar Heirs' claimed defenses and was not obtainable elsewhere. Cardinal also asserts none of the exceptions to Prof.Cond.R. 3.7 applied. Further, Cardinal asserts the Binegar Heirs' discovery responses identified Attorney Binegar as the only party with knowledge of the answers and that if deposed, he would invoke the work product doctrine. Additionally, Cardinal contends the Binegar Heirs failed to reveal in discovery that Attorney Binegar had ongoing communications with one of the Tomolonis heirs, and as such, Cardinal felt compelled to move to disqualify him. They claim their motion was wholly reasonable and sanctions were not warranted.

**{¶70}** Prof.Cond.R. 3.7 states in part:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case;

(3) the disqualification of the lawyer would work substantial hardship on the client.

**{¶71}** Consistent with the Binegar Heirs' argument, Cardinal's motion to disqualify may have been more effective had Cardinal secured counsel's deposition testimony in advance of filing the motion to disqualify. Alternatively, the motion may have been deemed unnecessary depending on what was learned during counsel's deposition.

**{¶72}** Notwithstanding, we cannot conclude that no reasonable lawyer would have filed this motion based on these facts and existing law. Attorney Binegar was counsel of record and had substantive personal knowledge about the underlying facts. There is nothing of record showing the motion was filed for the purpose of delay. And in light of the competing arguments, we conclude the filing of the motion to disqualify here does not constitute egregious and unjustifiable conduct. Thus, this aspect of the Binegar Heirs' second assigned error lacks merit.

Breach of Contract & Declaratory Judgment

**{¶73}** The Binegar Heirs' first assignment of error contends:

"The trial court erred as a matter of law when it granted summary judgment to SWN and IOG on the declaratory judgment cross-claim of Cross-Appellants Blatt."

**{¶74}** The Binegar Heirs' first assignment is comprised of two arguments. First, they claim the court committed reversible error by holding SWN/IOG could withhold payments for the one-half interest of the mineral rights not in dispute. Second, the Binegar Heirs claim the court erred by finding the lease agreement permits SWN/IOG to obtain a refund or recoup royalties paid.

**{¶75}** The Binegar Assigns' sole assigned error asserts:

"The trial court erred by granting summary judgment to SWN and IOG on Gateway and Vine's breach of contract claims alleging that SWN and IOG breached the Oil and Gas Lease by failing to make prescribed royalty payments."

**{¶76}** The Binegar Assigns' assignment is comprised of three arguments. First, they argue the applicable lease language does not authorize SWN/IOG to withhold royalty payments for undisputed mineral interests. Second, they claim SWN/IOG breached the agreement by not placing the withheld royalties in an interest-bearing escrow account during the litigation. And last, the Binegar Assigns contend SWN/IOG breached the duty

of good faith and fair dealing based on its withholding the royalty payments for the undisputed one-half of the mineral rights.

**{¶77}** To successfully prove a breach of contract, one must show "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. . . . The damages awarded for a breach of contract should place the injured party in as good a position as he would have been but for the breach." (Citations omitted.) *Crockett Homes, Inc. v. Tracy*, 2024-Ohio-1464, ¶ 116 (7th Dist.), quoting *Bertovich v. St. John*, 2012-Ohio-475, ¶ 19-20 (8th Dist.).

**{¶78}** Oil and gas leases are contracts subject to the rules of contract interpretation. *Lutz v. Chesapeake Appalachia, L.L.C.*, 2016-Ohio-7549, ¶ 11. "The rights and remedies of the parties to an oil and gas lease must be determined by the terms of the written instrument . . . Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." *Swallie v. Rousenberg*, 2010-Ohio-4573, ¶ 61 (7th Dist.), quoting *Harris v. Ohio Oil Co.,* 57 Ohio St. 118 (1897).

**{¶79}** When construing a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 273 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. Thus, where the terms of a contract are clear and unambiguous, a court cannot look beyond the plain language of the agreement to determine the rights and obligations of the parties. *Cocca Dev. v. Mahoning Cty Bd. of Commrs.,* 2010-Ohio-3166, ¶ 26 (7th Dist.), citing *Aultman Hospital Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989).

**{¶80}** "[A] writing . . . will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.,* 78 Ohio St.3d 353, 361 (1997). "Courts should attempt to harmonize provisions and words so that every word is given effect." *Christe v. GMS Mgt. Co.,* 124 Ohio App.3d 84, 88 (9th Dist.1997). Absent an ambiguity, courts must apply a contract "as written and conduct no further investigation." *State v. Hurd*,

2000-Ohio-2, citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584 (1995) (addressing statutory language).

**{¶81}** The December 13, 2012 Oil and Gas Lease between Robert P. Binegar and Eclipse Resources I, LP, covers 64.763 acres, more or less in Adams Township, Monroe County, Ohio.  It states in part:

> 4.  NO AUTOMATIC TERMINATION OR FORFEITURE
>
> . . .
>
> (B)  LIMITATION OF FORFEITURE.
>
> This lease shall never be subject to a civil or equity action, arbitration or other proceeding to enforce a claim of termination, cancellation, expiration of forfeiture due to any action or inaction by the Lessee, including, but not limited to, making or the failure to make any proscribed payments, authorized or required under the terms of this Lessee, unless the Lessee has received written notice of Lessor's claim and a demand for performance and thereafter fails or refuses to satisfy or to provide reasonable justification for its act or omission in response to Lessor's demand within 60 days from the receipt thereof.  If lessee timely responds to Lessor's demand, but in good faith disagrees with lessor's position and sets forth the reasons therefore, such a response shall be deemed to satisfy this provision, this Lease shall continue in full force and effect and no further damages (or other claims for relief) will accrue in Lessor's favor during the pendency of this dispute, other than claims for undisputed on-going payments that may be due under the terms of this Lease during the pendency of this dispute and any effort by the parties to resolve the dispute.
>
> 5.  PAYMENTS TO LESSOR.  Subject to the terms and conditions set forth herein, Lessee covenants to pay Lessor, proportionate to Lessor's percentage of ownership, as follows:
>
> . . .
>
> (B)  ROYALTIES:  The Lessee covenants and agrees:
>
> . . .

(iv) <u>Due Date for Payment</u>. The initial royalty payments due under this Lease shall be made on or before 120 calendar days following the last day of the month of first sales from a well on the Leasehold or lands pooled/unitized with the Leasehold. Thereafter, the royalties which are required to be paid to Lessor under this Lease shall be due and payable on or before the last day of the third calendar month following the month of production, i.e., quarterly royalty payments. Each royalty payment shall be accompanied by a check stub, schedule, summary or remittance identifying this Lease and showing the gross amount and disposition of the oil and gas produced (including natural gas liquids and/or condensate), the market value of the oil and gas (including natural gas liquids and/or condensate), and whether any sales were made to an Affiliate of Lessee. Unless otherwise herein expressly provided, any royalties or other payments provided for in this Lease which are not paid to Lessor within the time period specified therefore shall accrue interest at the prime interest rate plus five percent (5%) per annum from the due date until paid; provided, however, that in no event shall interest be due on disputed royalties or payments as set forth in this paragraph if it is determined that Lessee is not in default hereunder. Acceptance by Lessor, its successors, agents or assigns, of royalties which are past due shall not act as a waiver or estoppel of its right to receive or recover any and all interest due thereon under the provisions hereof.

. . .

(D) ADDITIONAL PROVISIONS: . . .

. . .

9. <u>TITLE DISPUTES</u>: Lessor covenants and agrees that if Lessor's title to the Leasehold shall come into dispute or litigation, or if, in the judgment of Lessee, there are bona fide adverse claims to the rentals, royalties, rights or privileges of Lessor herein provided for, Lessee, at its option, may withhold such rights or privileges or the payment of said rentals

or royalties to all persons until final adjudication or other settlement of such dispute, litigation or claims.

. . .

12. <u>PAYMENT REDUCTIONS AND CORRECTIONS</u>: If it is determined that Lessor owns a lesser interest in the oil and gas than the entire undivided fee simple estate, then the rental (including, without limitation, the Advanced Delay Rental Payments), royalties and shut-in royalties payable hereunder shall be paid to Lessor only in that proportion which Lessor's interest bears to the whole and undivided fee. If it is determined that Lessor does not have sufficient title to all or any portion of the oil and gas contained in, associated with, emitting from, or underlying the Leasehold, Lessor agrees on demand made to refund to Lessee any rental (including, without limitation, the Advanced Delay Rental Payments) or royalty previously paid Lessor, and to release Lessee from the payment of any future rental (including, without limitation, the Advanced Delay Rental Payments) or royalty, in proportion to the amount of acreage affected by the insufficient title. If it is determined that the quantity of acreage of land of the Leasehold recited herein is in excess of the true quantity of acreage of land, Lessor agrees on demand made to refund to Lessee any rental previously paid (including, the Advanced Delay Rental Payments), and to release Lessee from the payment of any future rental (including, the Advanced Delay Rental Payments), in the proportion that the excess of recited acreage over the true acreage in the Leasehold bears to the recited acreage. If the recited acreage is found to be less than the true quantity of acreage of land in the Leasehold, Lessee on demand made shall pay to Lessor the arrears in rental payments on the basis of excess of the true quantity of acreage over the said recited acreage and shall thereafter pay any rentals on the basis of the true quantity of acreage.

**{¶82}** The Lease Addendum attached and incorporated in the parties' lease states in pertinent part:

CONFLICT BETWEEN TERMS. *In the event of a conflict or inconsistency* between any of the terms and conditions contained in this Addendum and the other terms and conditions contained in the Lease, *the terms and provisions contained in this Addendum shall be controlling.*

. . .

ADVANCED DELAY RENTAL PAYMENT: Section 5(A) of the Lease is hereby deleted and replaced in its entirely with the following:

(A) ADVANCED DELAY RENTALS: Lessee agrees to pay within one hundred twenty (120) calendar days of the Lease Date, in proportion to Lessor's percentage of ownership of the oil and gas estate and related interests in the Leasehold, as pre-paid advanced delay rentals, the sum of Five Thousand Two Hundred Fifty and no/100 Dollars ($5,250.00) per net acre of the Leasehold, subject to Lessee's determination that title to the Leasehold is acceptable to Lessee as provided herein below (the "Advanced Delay Rental Payment"). Upon payment of the appropriate amount of the Advanced Delay Rental Payment, the parties hereto stipulate and agree that this is a "Paid Up" Lease with no further delay rental payments due to Lessor during the Primary Term hereof, and that any and all bonuses and delay rentals due or payable hereunder have been prepaid to Lessor for the purpose of keeping this Lease in effect during and for the entirely of the Primary Term.

i. The only reason for non-payment of any portion of the Advanced Delay Rental Payment shall be the identification by Lessee of a "Title Defect" (as defined below) relating to the Leasehold. A "Title Defect" means any irregularity, defect, lien, encumbrance, encroachment, right of first refusal, burden or claim of any kind that causes lessee to not have good and marketable title to the oil and gas rights to be leased and granted pursuant to this Lease or which materially interferes with the use of the Leasehold for oil and gas development, except for covenants, conditions and restrictions of record that do not materially and unreasonably interfere

with the use or the Leasehold for oil and gas development. A "Title Defect" shall not include a prior mortgage on the Leasehold.

. . .

TITLE: Lessor makes no representation or warranty, either express or implied, as to Lessor's title to the Leasehold. It shall be Lessee's sole burden and obligation to assure itself of the quality of title of the Leasehold; provided, however, that *if any question, claim or controversy is asserted that is materially inconsistent with all or part of Lessor's right, title, interest or ownership of this Lease, the oil and gas, and all other rights herein granted, then Lessee may, in its sole discretion, immediately withhold <u>any payments due hereunder</u> and deposit them into an interest-bearing escrow account until a final unappealable judicial determination has been made regarding such question, claim or controversy,* whereupon Lessee shall distribute the withheld payments among those judicially determined to be entitled to such payments. Notwithstanding the above, the lessor hereby represents and warrants that, to Lessor's knowledge, Lessor is not currently receiving any bonus, rental, or royalty as a result of any other oil and gas lease covering any or all of the leasehold, and that there are no producing or shut-in wells currently existing on the lands within the leasehold, or upon other lands with the boundaries of a drilling or production unit utilizing all or a part of the leasehold. *All advance delay rental payments, royalty payments, shut in payments and any other payments made to Lessor under this Lease are non-refundable*.

(Emphasis added.)

<u>WITHHOLDING PAYMENT FOR UNDISPUTED MINERAL RIGHTS</u>

**{¶83}** We address the first aspect of the Binegar Heirs' and Binegar Assigns' assignments of error collectively. They contend SWN/IOG immediately ceased making all royalty payments upon being served with Cardinal's complaint in April of 2022. The Binegar Heirs and Binegar Assigns sought continued payments associated with the undisputed half of the mineral rights, but SWN/IOG refused, prompting the Binegar Heirs' and Binegar Assigns' cross-claims for breach of contract and declaratory judgment.

{¶84} The Binegar Heirs and Binegar Assigns assert the lease requires the ongoing payment of royalties associated with any undisputed portion of the mineral interests. They claim SWN/IOG's withholding of all payments due and owed under the lease, including those payments due for the undisputed half of the mineral interests, was in violation of the lease agreement. They claim this was a breach of the contract and contrary to the plain language of the agreement when read as a whole.

{¶85} They contend the applicable lease language does not authorize SWN/IOG to withhold royalty payments for undisputed mineral interests. They claim the lease language only permits the withholding of payment associated with a claim and a "judicial determination" of ownership. Thus, when an interest is not in dispute or not subject to judicial proceeding, such that there can be a judicial determination, the lessee is not authorized to cease the associated royalty payments. And since 50% of the mineral interest would not be subject to a judicial determination, they claim the court erred by concluding SWN/IOG was permitted to withhold all the royalty payments. We disagree.

{¶86} The Binegar Heirs urge us to find a contractual theme obligating SWN/IOG to make payments for any undisputed portion of the mineral interest. The Binegar Heirs' and Binegar Assigns' reliance on other inapplicable sections in the lease agreement are not persuasive because the Title section of the Addendum explicitly addresses and governs the issue. The "Title" section of the Addendum states:

> [I]f any question . . . is asserted . . . with all or part of Lessor's . . . title, . . . then Lessee may . . . immediately withhold *any payments due hereunder* . . . until a final unappealable judicial determination has been made regarding such question, claim or controversy, whereupon Lessee shall distribute the withheld payments among those judicially determined to be entitled to such payments.

(Emphasis added.)

{¶87} A plain reading of the Title section confirms that although a dispute or litigation may concern only a portion of the mineral rights governed by the lease, this aspect of the agreement is written broadly and authorizes the lessee to withhold *any* payments due under the contract until the controversy is resolved. Absent an ambiguity, we are required to apply the agreement "as written and conduct no further investigation."

*State v. Hurd*, 2000-Ohio-2, citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584 (1995).  The language relied on by the Binegar Heirs and Binegar Assigns contained in the other lease provisions does not control over this specific section, which explicitly addresses the parties' rights and responsibilities when there is a title dispute.

**{¶88}** The language in the Addendum's Title provision addressing how payment should be made at the conclusion of the judicial proceedings governs just that—how payments should be made when the proceedings end.  This language does not apply to the lessees' authority to stop making payments when litigation is initiated when title is in dispute.  Thus, we find this aspect of their assignments of error lacks merit.

<u>INTEREST-BEARING ESCROW ACCOUNT</u>

**{¶89}** The Binegar Assigns also contend SWN/IOG breached the lease agreement by improperly withholding the disputed royalties by not placing the withheld royalties in an "interest-bearing escrow account."

**{¶90}**  As they contend, the Title section of the Lease Addendum explicitly requires the Lessee to deposit all withheld payments or royalties "into an interest-bearing escrow account until a final unappealable judicial determination has been made regarding such question, claim or controversy, whereupon Lessee shall distribute the withheld payments among those judicially determined to be entitled to such payments."

**{¶91}** SWN/IOG's lack of compliance with this provision is not disputed.  Instead of placing the withheld requisite payments in an interest-bearing escrow account as required, SWN/IOG kept account ledgers detailing payments owed.

**{¶92}** Notwithstanding SWN/IOG's failure to comply with this provision of the lease, after the Binegar Heirs and Binegar Assigns sought a preliminary injunction, SWN/IOG placed the withheld payments in an interest-bearing escrow account with interest dating back to the time lease payments were suspended.  This was done via an agreed judgment.  The April 9, 2024 judgment states in part "interest will be applied back to the date of suspense."  It also states "[n]one of these terms shall be construed as a waiver of any rights under the Binegar Lease."  (April 9, 2024 Judgment.)

**{¶93}** Thus, we find SWN/IOG technically failed to comply with this lease term. However, in light of the agreed corrective action, we find no breach since the Binegar Assigns cannot show damages, a necessary element of a breach of contract.  They were

not denied the time value of money since they were not entitled to the funds during the litigation, and the agreed judgment addresses interest.  Thus, we find no error.

DUTY OF GOOD FAITH & FAIR DEALING

{¶94}  The Binegar Assigns' final argument contends SWN/IOG breached the duty of good faith and fair dealing by withholding the royalty payments for the undisputed one-half of the mineral rights throughout this litigation.  Because we conclude the trial court was correct that 100% of the royalties were properly withheld based on the plain language of the Title provision in the Addendum, this argument lacks merit.

NO REFUND PROVISION

{¶95}  The second issue raised by the Binegar Heirs under their first assignment of error claims the trial court erred by rendering meaningless the "no refund provision" in the parties' lease.  The Binegar Heirs claim the trial court found the lease permitted SWN/IOG to obtain a refund of prior payments.  As the Binegar Heirs allege, the trial court stated in part:  "SWN (rightfully) may seek a recoupment of that portion of royalties that were paid, but not actually owed, to the Binegar Assigns."  The trial court also concluded the plain terms of the lease allowed the suspension of all royalty payments to guard against the potential overpayment to the Binegar Heirs and Binegar Assigns.

{¶96}  However, this aspect of the trial court's analysis was made while addressing the argument that SWN/IOG breached the lease agreement by withholding 100% of the royalties, instead of the 50% contested.  SWN/IOG argued it was withholding all the royalties in an effort to avoid overpaying, in the event Cardinal was successful in its attempt to quiet title to the disputed mineral interests in its favor.  Thus, the trial court's statements addressing SWN/IOG's right to a refund or to recoup royalties erroneously paid, is dicta.  The court was attempting to explain why the lease permitted SWN/IOG to suspend all royalty payments during litigation.

{¶97}  As the Binegar Heirs argue, the Lease Addendum states that all payments made to the lessor are nonrefundable.  Further, the Lease Addendum explicitly provides that its provisions are controlling over any conflicts between the Addendum and the Lease.  Thus, to the extent the trial court concluded the lease authorized SWN/IOG to recoup or recover a refund of lease payments already made, we disagree.  However,

Case Nos. 24 MO 0008, 24 MO 0009, 24 MO 0011, 24 MO 0012

because SWN/IOG did not assert a claim for a refund or for recoupment, any error in this regard is of no consequence.

## Conclusion

**{¶98}** For the foregoing reasons, we affirm the trial court's summary judgment decision to the extent it found Cardinal lacked standing to pursue its claims. We also affirm the award of summary judgment in favor of SWN/IOG regarding the breach of contract and declaratory judgment claims raised by the Binegar Heirs and Binegar Assigns.

**{¶99}** Regarding the Binegar Heirs' requests for expenses and attorney's fees, we find the trial court did not err by failing to grant their motion with regard to the motion to disqualify Attorney Binegar. However, we find error based on the court's failure to award the Binegar Heirs' request under Civ.R. 37(A)(5). We reverse this aspect of the trial court's decision and remand the matter to the trial court to either make the requisite findings for denying the motion for attorney fees or to require Cardinal "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Civ.R. 37(A)(5)(a). This aspect of the Binegar Heirs' second assigned error has merit.

**{¶100}** Accordingly, we affirm in part, reverse in part, and remand for further proceedings as detailed herein.

Waite, J., concurs.

Dickey, J., concurs.

Case Nos. 24 MO 0008, 24 MO 0009, 24 MO 0011, 24 MO 0012

———————————————

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed in part and reversed in part.  We hereby remand this matter to the trial court for further proceedings as detailed herein according to law and consistent with this Court's Opinion.  Costs to be taxed equally against Appellant, Cardinal Minerals, LLC, and Cross-Appellants, Gateway Royalty V, LLC and Vine Royalty L.P. (the Binegar Assigns).

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**