[Cite as *Cardinal Minerals, L.L.C. v. Miller*, 2024-Ohio-2133.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

CARDINAL MINERALS, LLC,

Plaintiff-Appellant,

v.

MENNO D. MILLER ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MO 0018**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2022-140

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Sara E. Fanning, Atty. Emily K. Anglewicz,* and *Atty. David J. Wigham,* Roetzel & Andress, LPA, for Plaintiff-Appellant Cardinal Minerals, LLC and

*Atty. Matthew W. Onest* and *Atty. Kyle W. Rea,* Krugliak, Wilkins, Griffiths & Dougherty, Co., L.P.A., for Defendants-Appellees Menno D. Miller, Sarah B. Miller, Joseph M. Miller, Edna J. Miller, Barbara M. Miller, Jacob J. Byler, Rhoda M. Miller, and Alan D. Miller and

*Atty. Paul N. Garinger*, Barnes & Thornburg, LLP, and *Atty. Craig E. Sweeney*, Taft, Stettinius & Hollister, L.L.P., for Defendant-Appellee SWN Production Company, LLC.

Dated:  June 4, 2024

**DICKEY, J.**

{¶1} Appellant, Cardinal Minerals, LLC, appeals from the October 11, 2023 judgment of the Monroe County Court of Common Pleas granting Appellees', SWN Production (Ohio), LLC ("SWN") and Menno D. Miller, Sarah B. Miller, Joseph M. Miller, Edna J. Miller, Barbara M. Miller, Jacob J. Byler, Rhoda M. Miller, and Alan D. Miller (the "Millers") motions for summary judgment and overruling Appellant's cross-motion for partial summary judgment.[1]

{¶2} This is an oil and gas case pertaining to Ohio's Dormant Mineral Act ("DMA") and Marketable Title Act ("MTA"). Appellant claims this matter presents a textbook example of a facially void abandonment under the DMA. Specifically, Appellant asserts that the surface owners, the Millers, published notice only to the original holders of the severed interest even though the original holders' estates and the estates of their named heirs and devisees were filed of record in Monroe County. Appellant claims the Millers' attempted abandonment of the severed interest was null and void. Appellant also alleges the severed interest is not subject to extinguishment under the MTA.

{¶3} The way in which Appellant acquired its interest is quite unique. Appellant claims to have obtained previously-abandoned interests by studying Monroe County's public records seeking out previously-recorded affidavits of abandonment that were completed by way of service by publication. Appellant researches to find heirs of the original reserving party, makes contact with them, and offers to purchase "their interest" in the purported abandoned minerals. Appellant then files lawsuits seeking an order that the abandonment process was invalid and pursuing damages from oil and gas operations.

{¶4} The trial court refused to condone what it called predatory business practices. Appellant argues the trial court erred in granting Appellees' motions for summary judgment and overruling its cross-motion for partial summary judgment. Because Appellant lacks standing, we affirm.

---

[1] On March 20, 2024, SWN filed a "Motion for Substitution of Party Defendant," revealing that SWN Production (Ohio), LLC was merged into SWN Production Company, LLC and requesting that SWN Production Company, LLC be substituted as the proper party Defendant. This Court grants SWN's motion.

## FACTS AND PROCEDURAL HISTORY

{¶5} This case involves 80.32 acres of land in Adams Township, Monroe County, Ohio, Parcel No. 01-007004.0000 (the "Property"). On November 25, 1922, Lena Mobley and Alonzo Mobley conveyed the Property to S.E. Pfalzgraf through a Warranty Deed. In a deed dated December 7, 1922 and recorded (the "Pfalzgraf Deed"), S.E. Pfalzgraf and his wife, Emma Pfalzgraf, (the "Pfalzgrafs") conveyed the Property to James Ady, except all the oil and gas, creating (the "Pfalzgraf Interest"). The Pfalzgrafs reserved the oil and gas rights ("Severed Mineral Interest"). On December 15, 1960, the Pfalzgrafs conveyed all of their royalty of all the oil and gas in the Property to H.F. Ady, R.K. Ady, and J.W. Ady, in a Sale of Royalty. The parties agree the Pfalzgrafs retained all the oil and gas in the Property less the royalty interest.

{¶6} Ultimately, the Property was conveyed to the Millers in 1999. The conveyance included a royalty interest in and to the oil and gas minerals associated with the Property. In December 2012, Eclipse Resources I, LP ("Eclipse"), now known as SWN, entered into an oil and gas lease with the Millers (the "2012 Lease"). Eclipse identified a title defect to the Millers in connection with the minerals under the 2012 Lease, i.e., the Pfalzgraf Interest. The Millers did not have clean title to the oil and gas rights covered by the lease. Eclipse informed the Millers it was still interested in leasing the Property if the Millers cured the mineral title issue.

{¶7} In May 2013, the Millers hired Buckeye Mineral Title, Ltd. ("Buckeye Mineral") to run title on the Severed Mineral Interest. It was discovered that S.E. Pfalzgraf died testate in 1972, devising all his property to his wife. Emma Pfalzgraf died testate in 1975. Emma's heirs upon her death were listed in her Estate as her children, Fred Pfalzgraf, Mary Pfalzgraf Blachly, and Helen Pfalzgraf, as well as her grandchildren, Sandra Cheyney and Carole Okey (the "Pfalzgraf Heirs").

{¶8} Buckeye Mineral searched the probate estates and found that no one claimed to be a holder because none of the estates mentioned the Severed Mineral Interest. Beginning in August 2013, Buckeye Mineral initiated the abandonment process on behalf of the Millers outlined by the DMA: by publishing notice of their intent to abandon the Pfalzgraf Interest in the Monroe County Beacon; filing an affidavit of abandonment in

the Monroe County Official Records; and requesting a notation of abandonment in the Monroe County Official Records.

{¶9} After taking the foregoing steps, and with the public records of Monroe County reflecting the abandonment of the Pfalzgraf Interest, the Millers, the record owners of the Pfalzgraf Interest, leased the oil and gas interest in the Property to Eclipse, recorded on January 23, 2014 (the "SWN Lease"). Declarations of pooling and unitization covering the Property were publically recorded in 2015 and 2016. Shortly thereafter, active wells began producing natural gas from the Property and SWN began paying royalties to the Millers.

{¶10} In September 2021, Appellant was formed and filed its articles of organization with the Ohio Secretary of State. (4/27/2023 Joel Hershman Deposition, p. 23, 28). Appellant has four owners, no employees, and no offices. (*Id.* at p. 32-33). Appellant's owners are Joel Hershman ("Hershman"), Brent Riggle ("Riggle"), Jesse Raymond ("Raymond"), and Olaf Resources, LLC ("Olaf"). (*Id.*) Appellant's only business location is Hershman's home in Canton, Ohio. (*Id.* at p. 33).

{¶11} Appellant scouts for oil and gas interests to purchase by searching the Monroe County records for Affidavits of Abandonment identifying those that are unable to complete service by certified mail. (*Id.* at p. 42-44). Appellant determines whether the property subject to an affidavit of abandonment was included in a producing unit. (*Id.* at p. 38). Appellant attempts to research the location of heirs that may not have received the notice by publication and offers to purchase their abandoned interest for the purpose of initiating litigation against both the surface owners, like the Millers, and a producer, like SWN. (*Id.* at p. 38-45, 77). Appellant used this process with the Pfalzgraf Heirs and for the Severed Mineral Interests. (*Id.* at p. 79-81, 105-106, 137-139).

{¶12} One of Appellant's owners, Olaf, is owned in part by Attorney David Wigham, Appellant's counsel. (*Id.* at p. 21-23, 31). Two other entities, Portland Resources, LLC and Camden Minerals, LLC, with overlapping ownership with Appellant are actively engaged in the same scouting process as Appellant, i.e., buying abandoned mineral interests for the purpose of initiating litigation. (*Id.* at p. 14, 27). Each of those entities has initiated suit in Monroe County and each is represented by Appellant's

counsel. (*Id.* at p. 27). Appellant, and these related companies, began filing their lawsuits before the end of 2021. (*Id.* at p. 23, 28).

{¶13} In January 2022, Appellant identified the Pfalzgraf Interest, nine years after the interest was publicly abandoned. (*Id.* at p. 42). Appellant contacted a number of the Pfalzgraf Heirs seeking to acquire the abandoned Pfalzgraf Interest so it could file suit and try to undo the statutory abandonment process undertaken by the Millers. (*Id.* at p. 37).

{¶14} Appellant advised the Pfalzgraf Heirs that it intended to purchase the Pfalzgraf Interest for the purpose of filing suit. (*Id.* at p. 77). Appellant would pay each heir $250 per acre for their original proportional interest. (*Id.* at p. 71, 105-106). Prior to even approaching the Pfalzgraf Heirs, Appellant was aware of the SWN Lease, knew there were active wells encumbering the property, and knew that the Millers were the record owners of the Pfalzgraf Interest. (*Id.* at p. 77, 104, 147). Nevertheless, without contacting SWN or the Millers, Appellant sought and accepted quitclaim deeds for the abandoned Pfalzgraf Interest by virtue of several conveyances from the Pfalzgraf Heirs so that Appellant could then file this case against Appellees. (*Id.* at p. 38, 120, 146); (Exhibits 23-35). Appellant separately paid each of the Pfalzgraf Heirs $100 for an "Assignment of Claims," drafted by Attorney Wigham, to pursue this lawsuit. (*Id.* at p. 80-81, 137, 139).

{¶15} On May 20, 2022, Appellant filed a six-count complaint: count one, declaratory judgment regarding the Millers' reasonable diligence in the search to locate the holders of the Pfalzgraf Interest and the publicly recorded abandonment; count two, declaratory judgment seeking to void the oil and gas lease SWN's predecessor, Eclipse, entered into with the Millers as the public record owners of the Pfalzgraf Interest nine years prior; count three, quiet title as to the ownership of the Pfalzgraf Interest; count four, ejectment/permanent injunction of SWN; count five, trespass against SWN; and count six, conversion against SWN regarding its development of, and production from, the subject mineral interest based upon the publicly recorded abandonment nine years prior. Appellees filed answers. Discovery ensued.

{¶16} On May 30, 2023, Appellees filed motions for summary judgment and Appellant filed a cross-motion for partial summary judgment.

Case No. 23 MO 0018

{¶17} Following a hearing, on October 11, 2023, the trial court granted Appellees' motions for summary judgment and overruled Appellant's cross-motion for partial summary judgment.

{¶18} Specifically, the trial court made the following findings/conclusions: the interests of each of the Pfalzgraf Heirs were deemed abandoned of record and vested in the Millers for approximately nine years prior to the purported transfers to Appellant; Appellant sought out the Pfalzgraf Heirs for the purpose of suing SWN who relied on the record chain of title to determine the lawful owner of the mineral interest at issue; no Pfalzgraf Heir filed either a claim to preserve or an affidavit identifying a savings event within 60 days of the publication of the notice of abandonment in 2013; the Millers proceeded to file an affidavit of facts and sought a marginal notation consistent with R.C. 5301.56(H)(2) regarding the abandonment of the Pfalzgraf Interest; the DMA is clear that the record of a severed oil and gas interest "'ceases to be notice to the public'" and "'shall not be received as evidence in any court in this state on behalf of the former holder or the former holder's successors or assigns'"; Appellant located the Pfalzgraf Heirs and recorded deeds to itself purportedly transferring an interest that was statutorily abandoned in the public records of Monroe County, Ohio; Appellant accepted and purchased transfers of an interest that does not exist in the public record; Appellant has no interest in the Property; as a result, Appellant lacks standing to assert claims in this case; notwithstanding the foregoing, the purported transfers to Appellant are void under the Doctrines of Champerty and Maintenance; Appellant exists for the sole purpose of pursuing litigation precisely like it has here; Appellant attempted to acquire the right to file a lawsuit; Appellant intended to purchase the Pfalzgraf Interest for the purpose of filing suit; and Appellant's claims for trespass and conversion and its request for an accounting fail as a matter of law. *See* (10/11/2023 Judgment Entry, p. 6-8, 10, 12, 21-22).

{¶19} Appellant filed a timely appeal and raises one assignment of error.[2]

---

[2] On December 14, 2023, Appellant filed a brief. On January 22, 2024, the Millers and SWN filed separate briefs and Gulfport Appalachia, LLC filed an amicus curiae brief in support of SWN. On February 1, 2024, Susan Blatt, Robert Binegar, Jr., Julie Binegar, Jennifer Butler, and John Butler filed an amicus curiae brief in support of Appellees. On February 14, 2024, Appellant filed a reply brief.

## SUMMARY JUDGMENT STANDARD OF REVIEW

An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

"(T)he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence,

and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

*Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 10-12.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEES ON ALL COUNTS IN APPELLANT'S COMPLAINT.**

{¶20} In its sole assignment of error, Appellant asserts the trial court erred in granting Appellees' motions for summary judgment. Appellant advances six arguments: (1) "When the holders conveyed their minerals to Appellant via quit-claim deed, the holders transferred all their rights at the time of the conveyance to Appellant, which conferred standing on Appellant to file the claims in this lawsuit"; (2) "Appellees' R.C. 5301.56(H)(2)(c) notice of failure to file was not a bar to Appellant filing a lawsuit to challenge the effectiveness of Appellees' abandonment"; (3) "Under *Gerrity* and *Fonzi,* Appellees did not use reasonable diligence in their search for the holders of the mineral interest at issue, and therefore, Appellees' attempted abandonment is void"; (4) "Appellant is in constructive possession of the mineral rights and therefore has standing to bring its quiet title claims"; (5) "The contract defenses of champerty and maintenance do not bar Appellant's claims"; and (6) "The trial court's decision on the merits of Appellant's complaint is reversible error because the trial court determined that Appellant did not have standing". (12/14/2023 Appellant's Brief, p. iii-iv).

{¶21} The main issue of standing is dispositive of this appeal, making Appellant's alternative arguments moot. *See* App.R. 12(A)(1)(c).

{¶22} Contrary to its position, Appellant cannot "step in the shoes" of the Pfalzgraf Heirs because the record supports the trial court's finding that only the Pfalzgraf Heirs had standing and thus, Appellant lacks standing to pursue its claims.

{¶23} Appellant could not buy, and the Pfalzgraf Heirs could not sell, an interest that no longer existed in the public record. By virtue of the abandonment performed in

2013, the Pfalzgraf Interest was "deemed abandoned and vested" in the Millers in the public records of Monroe County, Ohio. Thus, unless the Pfalzgraf Heirs received a judicial declaration that the abandonment performed by the Millers was invalid, the Pfalzgraf Interest ceased to exist and could no longer be the subject of a record transfer.

**{¶24}** Appellant seeks to hold SWN liable for its reliance on the record chain of title which clearly demonstrates the Pfalzgraf Interest had been vested in the Millers as the surface owners. The purported transfers of the abandoned Pfalzgraf Interest from individuals who were not record owners, and accepted by Appellant, violate the express language of the DMA. The interests of each of the Pfalzgraf Heirs had been deemed abandoned of record and vested in the Millers for approximately nine years before the attempted transfers to Appellant. Appellant sought out the Pfalzgraf Heirs for the sole purpose of pursuing litigation against Appellees.

**{¶25}** In support of its standing arguments, Appellant stresses it acquired the abandoned Pfalzgraf Interest via quitclaim deeds.

**{¶26}** "'[S]tanding is to be determined as of the commencement of suit.'" *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 18, 2012-Ohio-5017, ¶ 24, quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 570-571 (1992), fn. 5. "'[P]ost-filing events that supply standing that did not exist on filing may be disregarded, denying standing despite a showing of sufficient present injury caused by the challenged acts and capable of judicial redress.'" *Schwartzwald* at ¶ 26, quoting 13A Wright, Miller & Cooper, *Federal Practice and Procedure* 9, Section 3531 (2008). Assignment of rights to a lawsuit are void. *See Rancman v. Interim Settlement Funding Corp.,* 99 Ohio St.3d 121, 2003-Ohio-2721, ¶ 11.

**{¶27}** "[A] quitclaim deed does not prove ownership, but merely conveys any interest that [the grantor] has in the property to [the grantee]." *Cleveland v. McIntyre*, 8th Dist. Cuyahoga No. 109947, 2021-Ohio-2517, ¶ 21, citing *Gribben Wardle v. Gribben*, 7th Dist. Columbiana No. 1186, 1979 WL 207206 (Jan. 18, 1979); *see also Karras v. Karras*, 2d Dist. Montgomery No. 27403, 2017-Ohio-5829, ¶ 6, citing *Black's Law Dictionary* 1251 (6th Ed.1990) ("'A quit claim deed transfers any interest or claim which the grantor possesses in the property to the grantee.'").

**{¶28}** Here, the quitclaim deeds reference the reserving deed. When Appellant accepted the deeds, the recorded deed had a marginal notation indicating the Severed Mineral Interest was abandoned and no longer effective. The Pfalzgraf Heirs did not challenge that notation before executing and delivering the quitclaim deeds to Appellant. When Appellant accepted its deeds, it did so while its source instrument revealed Appellant was not acquiring a legally recognized interest.

**{¶29}** Thus, at the time the quitclaim deeds to Appellant were recorded, the Pfalzgraf Heirs did not own an interest in the minerals, i.e., they did not own anything of record. As such, they had nothing to quitclaim. Stated differently, no interest in real property was conveyed to Appellant.

**{¶30}** The trial court properly applied R.C. 5301.56, "Abandonment and preservation of mineral interests," which states in part:

> Immediately after the notice of failure to file a mineral interest is recorded, the mineral interest shall vest in the owner of the surface of the lands formerly subject to the interest, and the record of the mineral interest shall cease to be notice to the public of the existence of the mineral interest or of any rights under it. In addition, the record shall not be received as evidence in any court in this state on behalf of the former holder or the former holder's successors or assignees against the owner of the surface of the lands formerly subject to the interest.

R.C. 5301.56(H)(2)(c).

**{¶31}** The Pfalzgraf Heirs neither filed a claim to preserve under R.C. 5301.56(H)(1)(a) nor an affidavit identifying a savings event under R.C. 5301.56(H)(1)(b) within 60 days of the publication of the Notice of Abandonment in 2013. There is no dispute that the requirements of R.C. 5301.56(H)(2)(c) were met such that Appellant's quitclaim deeds cannot be received as evidence to support its standing arguments.

**{¶32}** Appellant relies on *Gerrity v. Chervenak*, 162 Ohio St.3d 694, 2020-Ohio-6705, and *Fonzi v. Brown*, 169 Ohio St.3d 70, 2022-Ohio-901, in support of its argument that R.C. 5301.56(H) is inapplicable if notice is deficient. In those cases, however, the

heirs of the mineral holders first sought a judicial declaration that the mineral interest had not properly been abandoned before any purported record transfer.

**{¶33}** Here, on the other hand, the Pfalzgraf Heirs did not seek a judicial declaration. Rather, they instead opted to transfer an interest that they did not own because it was abandoned. Although the Pfalzgraf Heirs may have had standing at one time to challenge the abandonment by seeking a declaration that it was void, they took no action to challenge the abandonment process completed by the Millers. Instead, the Pfalzgraf Heirs attempted to quitclaim their right to challenge the abandonment to Appellant, contrary to the express provisions of R.C. 5301.56(H)(2)(c). Appellant accepted transfers of an interest that do not exist in the public record, can claim no record interest in the Property, and therefore lacks standing.

**{¶34}** Appellant also relies on *Soucik v. Gulfport Energy Corp.*, 7th Dist. Belmont No. 17 BE 0022, 2019-Ohio-491, in an attempt to argue that the recording of a notice of failure to file and related marginal notation was not a bar to challenging the abandonment. In that case, the mineral holders had previously filed claims to preserve their mineral interests under R.C. 5301.56(H)(1), which nullified the subject provisions of (H)(2). *Id.* at ¶ 47-48. R.C. 5301.56(H)(2) applies "[i]f a holder * * * fails to file a claim to preserve the mineral interest[.]" Because no claims to preserve were filed in this case, Appellant's reliance on *Soucik* is misplaced.

**{¶35}** Appellant cannot "step in the shoes" of the Pfalzgraf Heirs and does not fit within the definition of a "holder." *See* R.C. 5301.56(A)(1) ("'Holder' means the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder"). Rather, Appellant is in the business of buying lawsuits. Appellant contacted the Pfalzgraf Heirs and sought to acquire the Pfalzgraf Interest so it could file suit in order to try to undo the abandonment process undertaken by the Millers. Such actions are barred under the Doctrines of Champerty and Maintenance.

**{¶36}** "The ancient practices of champerty and maintenance have been vilified in Ohio since the early years of our statehood." *Rancman, supra,* at ¶ 11, citing *Key v. Vattier*, 1 Ohio 132, 136 (1823).

> Champerty is a subset of maintenance. Maintenance is assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case. *Rancman*[*, supra,* at] ¶ 10. Champerty is a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues. *Id.*

*Blue Ash Auto Body, Inc. v. Frank*, 1st Dist. Hamilton No. C-210432, 2022-Ohio-1292, ¶ 17.

**{¶37}** The Supreme Court of Ohio has held "the assignment of rights to a lawsuit to be void as champerty." *Rancman* at ¶ 11, citing *Brown v. Ginn*, 66 Ohio St. 316, 64 N.E. 123, paragraph two of the syllabus (1902). "In recent years, champerty and maintenance have lain dormant in Ohio courts." *Rancman* at ¶ 12.

**{¶38}** As stated, in September 2021, Appellant was formed and filed its articles of organization with the Ohio Secretary of State; Appellant has four owners, no employees, and no offices; Appellant's owners are Hershman, Riggle, Raymond, and Olaf; Appellant scouts for oil and gas interests to purchase by searching the Monroe County records for Affidavits of Abandonment identifying those that were unable to complete service by certified mail; Appellant determines whether the property subject to an affidavit of abandonment was included in a producing unit; Appellant attempts to research the location of heirs that may not have received the notice by publication and offers to purchase their abandoned interest for the purpose of initiating litigation against both the surface owners, like the Millers, and a producer, like SWN; Appellant used this process with the Pfalzgraf Heirs and for the Severed Mineral Interests; Olaf is owned in part by Attorney David Wigham, Appellant's counsel; two other entities, Portland Resources, LLC and Camden Minerals, LLC, with overlapping ownership with Appellant and are actively engaged in the same scouting process as Appellant, i.e., buying abandoned mineral interests for the purpose of initiating litigation; each of those entities has initiated suit in Monroe County and each is represented by Appellant's counsel; Appellant, and these related companies, began filing their lawsuits before the end of 2021; in January 2022, Appellant identified the Pfalzgraf Interest, nine years after the interest was publicly

abandoned; Appellant contacted a number of the Pfalzgraf Heirs seeking to acquire the abandoned Pfalzgraf Interest so it could file suit and try to undo the statutory abandonment process undertaken by the Millers; Appellant advised the Pfalzgraf Heirs that it intended to purchase the Pfalzgraf Interest for the purpose of filing suit; Appellant would pay each heir $250 per acre for their proportional interest; prior to even approaching the Pfalzgraf Heirs, Appellant was aware of the SWN Lease and knew there were active wells encumbering the property; nevertheless, without contacting SWN or the Millers, Appellant sought and accepted quitclaim deeds for the abandoned Pfalzgraf Interest by virtue of several conveyances from the Pfalzgraf Heirs so that Appellant could then file this case against Appellees; Appellant separately paid each of the Pfalzgraf Heirs $100 for an "Assignment of Claims," drafted by Attorney Wigham, to pursue this lawsuit. *See* (Joel Hershman Deposition).

**{¶39}** Thus, the record reveals sufficient evidence of champerty and maintenance. Appellant wanted to purchase the purported right to file a lawsuit; told the Pfalzgraf Heirs it wanted to purchase from them the purported right to file a lawsuit; received quitclaim deeds that Appellant claims gave it the purported right to file this lawsuit; and then almost immediately filed this lawsuit. Appellant, through counsel, returned to the Pfalzgraf Heirs after filing this complaint to negotiate an "Assignment of Claims" for the sole purpose of aiding Appellant's already initiated trespass and related damages claims. This document is clearly an "assignment of rights to a lawsuit [which is] void as champerty." *Rancman, supra,* at ¶ 11.

**{¶40}** Contrary to Appellant's position, R.C. 1349.55 does not eliminate the common law prohibition against champerty and maintenance.[3] Rather, at most, the statute carves out a limited exception involving a consumer who has "a pending civil claim or action." *See* R.C. 1349.55(A)(1). The limited exception is inapplicable to the form of champerty and maintenance in which Appellant is currently engaged. Appellant acquired a litigious interest that in no way belonged to it for the purpose of maintaining and prosecuting the litigation against Appellees.

---

[3] Ohio courts continue to affirm the disdain for champertous arrangements after the 2008 enactment of R.C. 1349.55. *See, e.g, W. Broad Chiropractic v. Am. Family Ins*., 122 Ohio St.3d 497, 2009-Ohio-3506.

**{¶41}** Further, in support of its standing argument, Appellant claims it was injured by the Millers' abandonment of the Pfalzgraf Interest. However, the record reveals Appellant was not even created until the end of 2021 and the abandonment occurred in 2013. Thus, Appellant's alleged injury could only occur due to Appellant's conduct in purchasing a mineral interest that was abandoned as a matter of public record nine years prior. Appellant had full knowledge that the Pfalzgraf Interest was abandoned and that SWN was operating the subject wells under the SWN Lease before Appellant even approached the mineral holders.

**{¶42}** Upon consideration, the record supports the trial court's finding that Appellant lacks standing to pursue its claims. Accordingly, the trial court did not err in granting Appellees' motions for summary judgment.

## CONCLUSION

**{¶43}** For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The October 11, 2023 judgment of the Monroe County Court of Common Pleas granting Appellees' motions for summary judgment and overruling Appellant's cross-motion for partial summary judgment is affirmed.

Waite, J., concurs.

Robb, P.J., concurs.

Case No. 23 MO 0018

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**