[Cite as *Ohio River Resources, L.L.C. v. Westfall*, 2025-Ohio-2379.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

OHIO RIVER RESOURCES, LLC,

Plaintiff-Appellant,

v.

KEVIN WESTFALL et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MO 0017**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2023-196

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Sara E. Fanning*, *Atty. David J. Wigham,* Roetzel & Andress, LPA, for Plaintiff-Appellant and

*Atty. Craig E. Sweeney, Atty. Zachary D. Eddy,* Taft Stettinius & Hollister LLP, for Kevin Westfall and Janet Westfall, and *Atty. John Kevin West, Atty. John C. Ferrell*, *Atty. Katherine R. Herrmann,* Steptoe & Johnson, PLLC for Ohio GasCo, LLC, and *Atty. Phillip T. Glyptis*, Burns White LLC for Diversified Production, LLC.

Dated:  June 26, 2025

---

**Robb, P.J.**

{¶1}   Appellant Ohio River Resources, LLC, appeals the September 11, 2024 judgment granting Appellees' motion for judgment on the pleadings.  Appellant argues the trial court's decision was premature since the pleadings had not yet closed and the trial court erred by finding it lacks standing.  We affirm.

## Statement of the Case

{¶2}   Ohio River Resources, LLC (Ohio River), filed a complaint in the Monroe County Court of Common Pleas in August of 2023 asserting claims for declaratory judgment, quiet title, conversion, and breach of contract concerning oil, gas, and mineral royalties underlying approximately 49.25 acres in Center Township.

{¶3}   As defendants, Ohio River named Kevin Westfall, Janet Westfall, 100 additional individuals, Diversified Production, LLC, and Ohio GasCo, LLC.  Ohio River alleges some of the named individuals reside at the addresses set forth in the complaint and other named individuals are deceased and that their heirs, assigns, and/or next of kin are unknown to Ohio River.  (August 17, 2023 Complaint.)

{¶4}   Ohio River claims it acquired approximately 55% of an oil, gas, and mineral reservation created by and in favor of William T. Jackson and Arminda Jackson in 1912, which Ohio River refers to as the "Jackson Interest."  Ohio River contends the Jackson Interest was repeated in the "Root Deed" recorded February 25, 1972 conveying the real property from Robert and Mildred Hackenberger to Jean I. Calfee and that this root deed reserved the oil, gas, and mineral reservation in the Jackson heirs.  Ohio River claims this is the root of title under the Marketable Title Act (MTA) and that upon the death of Arminda Jackson intestate, the Jackson Interest became vested in the heirs of W.T. Jackson. (August 17, 2023 Complaint.)

{¶5}   Ohio River references 12 quitclaim deeds in its complaint and attaches the same as exhibits.  The deeds are dated from December 2022 through March 2023, and each conveys oil, gas, and mineral rights to Ohio River from a descendant of W.T. Jackson.

**{¶6}** Kevin and Janet Westfall acquired the real property in 1987, subject to the severed interest. In 2013, the Westfalls sought to abandon the Jackson Interest. Ohio River contends the abandonment proceedings undertaken by the Westfalls were legally insufficient. Ohio River alleges the Westfall notice of abandonment via publication did not satisfy R.C. 5301.56(F)(3) since it did not contain the volume and page number of the recorded instrument on which the Jackson Interest is based. Additionally, Ohio River claims none of the holders of the Jackson Interest received certified mail notice of the Westfalls' intent to deem the interest abandoned, contrary to R.C. 5301.56(E)(1). This is despite the fact that, according to Ohio River, a reasonably diligent search of the Monroe County public records revealed the names and addresses of several heirs of W.T. Jackson and the holders of the Jackson Interest. (August 17, 2023 Complaint.)

**{¶7}** Ohio River also contends the timely affidavit of abandonment was legally deficient because it did not contain the volume and page number of the recorded instrument on which the Jackson Interest is based, in violation of R.C. 5301.56(G)(2). Ohio River claims the Westfalls' amended abandonment affidavit contained the volume and page number, but that the amended notice was filed 68 days after the notice was published, and as such, violated R.C. 5301.56(E)(2). In light of the failure to comply with these mandatory notice provisions, Ohio River claims the Jackson Interest was not abandoned. Thus, Ohio River claims the interest remained vested in the holders of the Jackson Interest, which was subsequently conveyed to Ohio River. (August 17, 2023 Complaint.)

**{¶8}** Notwithstanding the allegedly improper abandonment, Ohio River claims the Westfalls leased the oil and gas rights to EM Energy Ohio, LLC, in 2013, and that EM Energy established the Zorin West Unit by declaration of pooling, recorded in September of 2017. Ohio River contends the Zorin West Unit contains 45.1627 acres of the subject property and there are two wells on this unit that have been producing oil and/or gas from the property since 2018. EM Energy also established the Valenka Unit, which Ohio River claims to contain 4.0779 acres of the subject property. There is one well on the Valenka Unit, which has been producing oil and/or gas since 2020. Ohio River claims it is entitled to a portion of these oil and gas royalties. (August 17, 2023 Complaint.)

**{¶9}**  According to the complaint, EM Energy sold the lease to Alliance Petroleum Co. LLC, and Alliance was later converted to Diversified.  In 2017, Ohio GasCo became the operator of the wells.  (August 17, 2023 Complaint.)

**{¶10}**  Ohio River asks the trial court to determine the Jackson Interest has not been extinguished; to determine the Westfalls do not own an interest in the oil and gas; to declare the Westfall lease null and void; and to determine that Ohio River is entitled to future and past royalties under the Westfall lease.  (August 17, 2023 Complaint.)

**{¶11}**  Ohio River also seeks declaratory judgment that the Westfalls failed to use reasonable diligence in their search for the Jackson Interest holders before the Westfalls published their notice of intent to abandon.  Ohio River seeks a judicial declaration that the Westfalls' notice was legally deficient and it is null and void.  It asks the court to conclude the Westfalls do not own an interest in the Jackson Interest, which is instead vested in Ohio River.  (August 17, 2023 Complaint.)

**{¶12}**  Ohio River claims because the Westfalls failed to comply with the mandatory provisions of the Dormant Mineral Act (DMA), the Jackson Interest was not extinguished, and thus, Ohio River is entitled to have the property quieted in its favor.  For its conversion claim, Ohio River asserts that pursuant to the Westfall lease, Diversified and/or Ohio GasCo have converted oil and gas produced from the subject property.  Thus, Ohio River seeks an order transferring the proceeds from the respective wells to Ohio River, plus punitive damages.  Alternatively, Ohio River seeks damages for breach of contract from Diversified and Ohio GasCo.  Ohio River seeks to recover its proportionate share of the proceeds from the sale of the oil and gas from the property.  (August 17, 2023 Complaint.)

**{¶13}**  Four individual defendants filed separate pro se answers admitting one paragraph in the complaint and denying the remaining allegations.  (September 11, 2023 Answer of Cheryll Staten, Shirley B. Wingrove Rutter, Carroll L. Rutter; September 8, 2023 Answer of Cullen L. Rutter.)

**{¶14}**  Another pro se individual defendant, Michael Wesley Brown, mailed a letter to the clerk of courts, which was filed with the clerk.  He denies and disclaims any and all ownership and relationship to the property.  (September 22, 2023 letter.)

{¶15} Defendant David Schultz also filed a pro se answer denying all the allegations in the complaint.  (September 25, 2023 Answer of David Schultz.)

{¶16} GasCo, LLC filed an answer to the complaint.  It also filed a counterclaim against Ohio River for declaratory judgment and to quiet title.  GasCo's cross-claim is against the other named individual defendants, except the Westfalls and Diversified.  The cross-claim asks the court to deem the Jackson Interest extinguished under the MTA and to quiet title in favor of GasCo against the claims of Ohio River and the cross-claim defendants.  (October 16, 2023 Answer, Counterclaim & Cross-claim.)

{¶17} Defendants, Patricia Ann Jones Newell, Vincent M. Jones, and Susan Eileen Jones Paparella filed a joint answer and denied the allegations in the complaint.  However, as for paragraphs 229 through 237 of the complaint, these defendants admitted to having an interest in the real property and mineral rights at issue.  (October 16, 2023 Joint Answer.)

{¶18} On November 2, 2023, Ohio River filed a "Motion to Drop Defendants."  This motion claims certain defendants should be dismissed from the action since Ohio River acquired these defendants' interests in the Jackson Interest.  It states in part:

> By a Quit Claim Deed, the Defendants Jane A. Holtsclaw Sulsberger, Sue E. Holtsclaw Loechler, Jennifer Charleen Jones Kasler, Deborah L. Jones Sewell, Billy R. Bushre, Kathy Rossio, Ricky Bushre, Janet Greening, Daniel Stover, Jr., Steven Stover, Mitchell Stover, James L. Rutter, Devon Dosson, Derek Dosson, Amanda Bauer, Jacquelyn Haller, Tom Stover, Carol Ann Myers, Lois Neitzke, Wayne Stover, and Donna St. John conveyed their interest in the Jackson Interest to Plaintiff in this action.

(November 2, 2023 Motion to Drop Defendants.)

{¶19} Ohio GasCo filed its first amended answer (November 13, 2023 Amended Answer.)  The suggestions of death of three named defendants, i.e., Robert Eugene Stover, Patricia Ann Kohl Collins, and Richard Edward Stover, were also filed.  (November 13, 2023 Suggestions of Death.)  Ohio River voluntarily dismissed as defendants Monica Lamey and Amber Chambers.  (November 13, 2023 Dismissal.)

{¶20} Ohio River filed its answer to Ohio GasCo's counterclaim. (November 13, 2023 Answer to Counterclaim.) Ohio River also filed its answer to the Westfall counterclaim. (November 16, 2023 Answer to Counterclaim.)

{¶21} On November 29, 2023, the court granted Ohio River's motion to drop certain defendants and deemed the complaint amended to conform with the conveyances set forth in the motion. (November 29, 2023 Order.)

{¶22} On December 4, 2023, Ohio River filed a second motion to drop defendants, namely Terry Leonard Tailard, David W. Klabuhn, Kandance Mancha, and Charles N. Klabuhn. (December 4, 2023 Motion to Drop Defendants.) On December 4, 2023, Ohio River also filed a notice of voluntary dismissal of Michael Brown and Timothy Brown; a motion to add as defendants Gregory and Leslie Cox; and three motions to substitute certain parties in light of the prior suggestions of death filed regarding named defendants.

{¶23} Certain parties filed an agreed confidentiality and protective order. It was entered by and between Ohio River, Kevin and Janet Westfall, Diversified Production, LLC, and Ohio GasCo, LLC. (December 13, 2023 Agreed Confidentiality and Protective Order.)

{¶24} The trial court granted Ohio River's second motion to drop defendants. The court also granted its motion to add as defendants Gregory and Leslie Cox; Ohio River's motions to substitute Richard Stover and Robert Stover; and Ohio River's motion to substitute Patricia Ann Kohl Collins. (January 2, 2024 Orders.)

{¶25} Ohio River filed its third motion to drop defendants, which the trial court granted. (March 19, 2024 Order.) Ohio River filed a fourth motion to drop defendants, alleging Ohio River had since acquired the respective Jackson Interest from these defendants in February of 2024 via quitclaim deeds. (May 22, 2024 Fourth Motion to Drop Defendants.)

{¶26} On May 23, 2024, Ohio River moved to serve multiple defendants by publication. The trial court directed the parties to submit a joint notice of publication for the court to approve. (July 11, 2024 Judgment.)

{¶27} On June 25, 2024, Appellees, Kevin and Janet Westfall, Ohio GasCo, LLC, and Diversified Production, LLC, filed a joint motion for judgment on the pleadings. They claimed Ohio River lacked standing to raise its claims in light of this court's recent decision

in *Cardinal Minerals, LLC v. Menno D. Miller*, 2024-Ohio-2133 (7th Dist.) ("*Cardinal I*"), and because Ohio River received by quit claim deed royalty rights of the property's heirs or holders after abandonment was complete and the leases were executed. The moving defendants claimed the "only mechanism for invalidating a completed abandonment is a legal action challenging the abandonment by the holders of the mineral rights themselves." They argued the alleged deficiencies in the Westfalls' abandonment process had to have been challenged by an heir of the original reserving party, and could not be contested by a post-abandonment purchaser of a royalty interest. (June 25, 2024 Motion for Judgment on the Pleadings.)

{¶28} Ohio River opposed the Civ.R. 12(C) motions. Ohio River argues the instant case is distinguishable from the *Cardinal Mineral* cases since the abandonment here is facially defective. *See Cardinal I; Cardinal Minerals, LLC v. Joseph M. Miller,* 2024-Ohio-3121 (7th Dist.) ("*Cardinal II*") It alleges neither the notice of intent to abandon nor the affidavit of abandonment included the correct volume and page number on which the mineral interest is based, contrary to mandatory statutory language and caselaw. (July 15, 2024 Opposition.)

{¶29} Ohio River also argued the motion for judgment on the pleadings was premature because the pleadings had not "closed" since other defendants being served via publication had 28 days after the final publication date to answer or plead. Further, Ohio River urged the court to disregard the *Cardinal Mineral* cases and conclude that Ohio River, as an assignee, is a holder. In support of this argument Ohio River cited *Jefferis Real Estate Oil & Gas Holdings, LLC v. Schaffner Law Offices, L.P.A.*, 2018-Ohio-3733, ¶ 30 (7th Dist.), which held in part that "[a] timely post-notice-of-abandonment claim to preserve used to thwart abandonment of a mineral interest can be filed by a holder. It can also be filed by a holder's successor or a holder's assignee." Last, Ohio River urged the trial court to find that a marginal notation of a purported abandonment is a legal nullity, and as such, cannot be used as evidence of abandonment in a court. (July 15, 2024 Opposition.)

{¶30} Appellees filed a reply in support of their motion for judgment on the pleadings. They argued that regardless of a deficiency in the abandonment documents, a subsequent purchaser lacks standing to challenge the alleged deficiencies. And as for

whether the proceedings were "closed," they argued the proceedings were closed because the actual three defendants moving for judgment on the pleadings had filed answers to Ohio River's complaint. (August 5, 2024 Reply.)

**{¶31}** The court approved the joint notice for publication. (August 12, 2024 Judgment.) The notice of publication was filed with the court. It states the last publication date was to be September 26, 2024 and the time for the named defendants to file their respective answers commenced that date. (August 12, 2024 Notice by Publication.)

**{¶32}** On September 11, 2024, the trial court granted the motion for judgment on the pleadings. The court held Ohio River does not have standing to challenge the allegedly defective abandonment undertaken by the Westfalls. The trial court relied on this court's decision in *Cardinal I* and found the substance of Ohio River's claims were equivalent to those in *Cardinal I*. And citing only R.C. 5301.56(H)(2), the trial court held "the Ohio DMA prohibits the transfer of an abandoned oil and gas interest." Thus, the court concluded Ohio River's contentions challenging the validity of the abandonment were irrelevant to its standing determination. (September 11, 2024 Judgment.)

**{¶33}** The court did not address Ohio River's argument that the pleadings were not closed for Civ.R. 12(C) purposes. The trial court also did not address the doctrines of champerty and maintenance. (September 11, 2024 Judgment.)

**{¶34}** Ohio River raises one assignment of error on appeal.

## Assignment of Error

**{¶35}** Ohio River's sole assignment of error asserts:

"The trial court erred as a matter of law when it granted judgment on the pleadings in Appellees' favor."

**{¶36}** This assignment of error consists of three subarguments. First, Ohio River contends the trial court erred by granting judgment on the pleadings before the pleadings were closed. Second, Ohio River argues it, as a mineral buyer and assignee, has standing to challenge a void abandonment where the notice of abandonment and affidavit of abandonment do not identify the mineral interest intended to be abandoned, contrary to R.C. 5301.56(F)(3) and (G)(2). Last, Ohio River claims this court should reexamine the *Cardinal Mineral* cases under *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, and conclude they were wrongly decided.

**{¶37}** As for Ohio River's argument that the pleadings were not closed, such that dismissal under Civ.R. 12(C) was improper, we agree in part but find no reversible error.

**{¶38}** We review Civ.R. 12(C) motions de novo since motions for judgment on the pleadings resolve questions of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). A determination of a Civ.R. 12(C) motion must be based solely on the allegations in the pleadings and any attached documents or writings. *Peterson v. Teodosio*, 34 Ohio St.2d 161 (1973); Civ.R. 7(A); Civ.R. 10(C).

**{¶39}** Civ.R. 12(C) states: "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

**{¶40}** The pleadings are typically "closed" when an answer is filed. However, if there is a counterclaim, cross-claim, or third-party complaint filed, the pleadings are closed when an answer or reply is filed. Civ.R. 7(A).

**{¶41}** Here, Ohio River agrees each of the Appellees filed their respective answers to Ohio River's complaint before the court granted their motion. However, Ohio River claims the pleadings were still open as to other parties in the case because service via publication was ongoing and these defendants still had time to respond.

**{¶42}** Appellees do not dispute the pleadings as to all parties to the case had not yet closed. However, they urge us to affirm since the pleadings had closed between the parties affected by and subject to the court's September 11, 2024 judgment on the pleadings. Appellees claim that even if the court technically erred, the error was harmless.

**{¶43}** Consistent with Ohio River's argument, the trial court's August 12, 2024 judgment granted the joint motion for authorization to serve more than 60 individual defendants by publication. This judgment states the named individuals will be served via publication with Ohio River's complaint, Kevin and Janet Westfall's cross-claim, and Ohio GasCo's cross-claim, each of which sought "to obtain a court declaration regarding the legal interpretation of an oil and gas lease" in a deed recorded in Monroe County and for "an accounting and damages for breach of leases." The service by publication was ordered to occur for six consecutive weeks and stated these additional defendants had 28 days after the last date of publication to answer the respective pleadings. (August 12, 2024 Journal Entry.)

Case No. 24 MO 0017

**{¶44}** In *State ex rel. Kaylor v. Bruening*, 80 Ohio St.3d 142, 144 (1997), the Ohio Supreme Court held that a premature Civ.R. 12(C) motion cannot be considered by the trial court. *Id. citing Piersant v. Bryngelson*, 61 Ohio App.3d 359, 363 (1989). In that case, Judge Bruening had not filed an answer when she filed a motion to dismiss. The Supreme Court found the appellate court erred by construing it as a Civ.R. 12(C) motion for judgment on the pleadings since the pleadings had not closed. *Id.* Instead, the court should have considered the motion under Civ.R. 12(B)(6). Notwithstanding the technical error, the *Bruening* Court acknowledged its obligation under Civ.R. 61 to determine whether the error was harmless. *Id.*

**{¶45}** Civ.R. 61 governs harmless error in civil cases and states in part:

[N]o error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for . . . vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Thus, we should not reverse a judgment when the claimed error is harmless. *See Knor v. Parking Co. of Am.,* 73 Ohio App.3d 177 (1991); *Fox v. Fergus Capital, LLC*, 2024-Ohio-2255, ¶ 57 (7th Dist.).

**{¶46}** Although the pleadings in this case were not closed in light of the incomplete service by publication and subsequent 28 days for other defendants to answer, the pleadings by and between the instant parties were closed. Ohio River does not contend this procedural deficiency affected its substantial rights. Accordingly, the ruling, while technically premature, was harmless. This aspect of Ohio River's assigned error lacks merit.

**{¶47}** Ohio River next challenges the court's decision finding it lacks standing. Ohio River contends this case is distinguishable from the *Cardinal Mineral* cases since the abandonment defects here are clear statutory violations apparent from the record chain of title.

Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to

be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.

(Citation omitted.)  *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996).  "Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law."  (Citation omitted). *Id.*

**{¶48}**  As stated, Appellees claimed, and the trial court agreed Ohio River lacked standing.  The court held Ohio River does not have standing to challenge the allegedly defective abandonment undertaken by the Westfalls.  The trial court relied on this court's decision in *Cardinal I* and found the substance of Ohio River's claims in this case are equivalent to those in *Cardinal I*.

**{¶49}**  The trial court summarized the facts and allegations, stating:

Nearly a decade after the completion of the abandonment process and the record vesting of the Severed Interest in the Westfalls (as the owners of the surface of the Property), starting in 2022, Plaintiff began contacting the Jackson Heirs in an attempt to acquire the abandoned of-record Severed Interest.  Having "acquired" various portions of the Severed Interest from the Jackson Heirs prior to the filing of this Complaint by virtue of a series of deeds recorded in the Official Records of the Monroe County Recorder's Office, . . . Plaintiff purported to own . . . [55%] of the Severed Interest.  Since the filing of the Complaint, Plaintiff has purported to "acquire" various other portions of the Severed Interest from the Jackson Heirs."

The Seventh District Court of Appeals just considered an identical factual scenario in . . . *Miller I* . . . and the *Miller I* Court held that Cardinal lacked standing to pursue its claims against the relevant surface/mineral owner and the oil and gas producer.  . . . Due to the several cases now brought by Cardinal (and their believed affiliates), this Court finds that the Ohio DMA prohibits the transfer of an abandoned oil and gas interest.  See R.C. 5301.56(H)(2).

Case No. 24 MO 0017

The trial court also quoted this Court's decision in *Cardinal I* at length, including the following:

>the quitclaim deeds reference the reserving deed. When Appellant accepted the deeds, the recorded deed had a marginal notation indicating the Severed Mineral Interest was abandoned and no longer effective. . . . When Appellant accepted its deeds, it did so while its source instrument revealed Appellant was not acquiring a legally recognized interest.

{¶50} Further citing this court's *Cardinal I* decision, as well as R.C. 5301.56(H)(2), the trial court held: "a party accepting purported quitclaim deeds of an interest that is abandoned of record does not confer standing on the transferee . . . to challenge an abandonment" and "the Ohio DMA prohibits the transfer of an abandoned oil and gas interest." Thus, the trial court concluded Ohio River's contentions challenging the validity of the abandonment were irrelevant to its standing determination. (September 11, 2024 Judgment.)

{¶51} Standing presents a threshold issue. A party must have a personal stake in the outcome of the controversy to make a legal claim or seek judicial enforcement of a duty or right. *Moore v. Middletown*, 2012-Ohio-3897, ¶ 21. A plaintiff must demonstrate he suffered an injury caused by the defendant or traceable to the alleged conduct of the defendant, and the injury should have a legal or equitable remedy. *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992). Whether established facts confer standing to assert a claim is a question of law, which we review de novo. *Portage Cty. Bd. of Commrs. v. Akron*, 2006-Ohio-954, ¶ 90.

{¶52} Standing does not turn on the merits of the plaintiffs' claims but rather on "whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case." *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 7. In *Kincaid v. Erie Ins. Co.*, 2010-Ohio-6036, ¶ 20, the Ohio Supreme Court found dismissal under Civ.R. 12(C) was warranted based on the plaintiff's lack of standing.

{¶53} As a result of the lack of compliance with mandatory abandonment requirements evident on the face of record documents, Ohio River claims this case is

distinguishable from this court's Cardinal Minerals decisions.  For the following reasons, we disagree.

**{¶54}** As stated, Ohio River identifies two alleged deficiencies with Westfalls' abandonment undertaking.  Ohio River alleges neither the notice of intent to abandon nor the affidavit of abandonment included the correct volume and page number on which the mineral interest is based, contrary to R.C. 5301.56(F)(3) and (G)(2).  Ohio River claims these are statutory requirements that must be satisfied for abandonment to occur and before R.C. 5301.56(H)(2) is triggered.

**{¶55}** R.C. 5301.56(F) states the notice sent by certified mail or served by publication on the holders, their successors, or assigns,

> *shall* contain all of the [five] following:  . . . (3) A description of the mineral interest to be abandoned. The *description shall include the volume and page number of the recorded instrument on which the mineral interest is based.* . . . (5) A statement of the intent of the owner of the surface of the lands subject to the mineral interest to file in the office of the county recorder an affidavit of abandonment at least thirty, *but not later than sixty days after the date on which notice is served or published*, as applicable.

(Emphasis added.)

**{¶56}**  Appellant also contends the affidavit of abandonment is facially deficient as it fails to comply with one of the five mandatory components set forth in R.C. 5301.56(G)(2), which provides:  "An affidavit of abandonment shall contain all of the [five] following: . . . (2) *The volume and page number of the recorded instrument on which the mineral interest is based.*  . . . (3) A statement that the mineral interest has been abandoned pursuant to division (B) of this section." (Emphasis added.)  *Id.*

**{¶57}** Ohio River claims the Westfalls' affidavit of abandonment contains the wrong volume and page number and the Westfalls attempted to correct the error by filing an amended affidavit of abandonment.  However, Ohio River claims the amendment was filed more than 60 days after the R.C. 5301.56(E)(1) notice was published and is thus, contrary to law and invalid.  As a result of these record deficiencies, Ohio River contends the Jackson Interest was not abandoned, and consequently, remained vested in the Jackson heirs.  They contend the statutory violations in the instant matter are palpable on

the record chain of title unlike the claims of failure to use due diligence in the Cardinal cases.

**{¶58}** Appellees do not challenge these contentions. Instead, they insist we cannot reach the merits of the alleged abandonment deficiencies since Ohio River lacks standing to challenge abandonment based on our Cardinal Minerals decisions.

**{¶59}** Ohio River claims it has standing to challenge the abandonment here in light of the Westfall's failure to identify the volume and page in the affidavit of abandonment and notice, which are mandatory statutory provisions that must be satisfied for abandonment to occur and before R.C. 5301.56(H)(2) applies.

**{¶60}** Appellees disagree and urge us to conclude that these arguments are irrelevant because the record chain of title showed abandonment was complete before the transfers of the Jackson Interest to Ohio River occurred. We agree.

**{¶61}** The lone provision the trial court cites and relies on for its decision is R.C. 5301.56(H)(2). It states if the holder or the holder's successors or assigns of the mineral interest fails to file a timely claim to preserve the interest, then the surface owner shall file a notice with the county recorder declaring the mineral interest abandoned. This provision also states:

> Immediately after the notice of failure to file a mineral interest is recorded, the mineral interest shall vest in the owner of the surface of the lands formerly subject to the interest, and the record of the mineral interest shall cease to be notice to the public of the existence of the mineral interest or of any rights under it. In addition, the record shall not be received as evidence in any court in this state on behalf of the former holder or the former holder's successors or assignees against the owner of the surface of the lands formerly subject to the interest.

R.C. 5301.56(H)(2)(c).

**{¶62}** As stated, Ohio River contends the Westfalls' notice of abandonment and affidavit of abandonment were facially deficient since these instruments did not comply with mandatory abandonment provisions. Appellees do not dispute these alleged statutory shortcomings. The trial court found the completion of the statutory requirements were irrelevant to its invocation of and reliance on R.C. 5301.56(H)(2)(c) to conclude Ohio

Case No. 24 MO 0017

River lacks standing. It stated in part: "an alleged deficiency in an abandonment document . . . does not put a party in Plaintiff's position with standing to challenge the purported defective abandonment." (September 11, 2024 Judgment.)

**{¶63}** Courts are to liberally construe the ODMA "to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title." R.C. 5301.55. Further, when concluding the ODMA does not violate the Retroactivity Clause, the Supreme Court in *Corban v. Chesapeake Expl., L.L.C.*, 2016-Ohio-5796, explained the 2006 version of the ODMA was self-executing, meaning a surface owner was not required to pursue litigation to quiet title a dormant mineral interest. Unlike the 1989 ODMA, the 2006 version automatically transfers the interest from the mineral rights holder to the surface owner by operation of law. *Id.* at ¶ 31. *Corban* explained:

> If neither a claim to preserve the interest nor an affidavit proving that a saving event occurred within the preceding 20 years is timely recorded, then the surface holder may record a notice that the mineral interest has been abandoned, and "the mineral interest shall vest in the owner of the surface of the lands formerly subject to the interest, and the record of the mineral interest shall cease to be notice to the public of the existence of the mineral interest or of any rights under it." R.C. 5301.56(H). This statute therefore operates to establish the surface owner's marketable record title in the mineral estate.

*Id.* at ¶ 30.

**{¶64}** The *Corban* Court also stated: "the legislature [by enacting the ODMA] has merely provided a method for the surface holder to obtain marketable record title to an abandoned mineral interest without having to resort to litigation to have that interest declared abandoned." *Id.* at ¶ 35. Any alleged deficiencies with the surface owner's compliance with the abandonment process, like here, must be challenged in court. And to challenge an abandonment in court, one must have standing.

**{¶65}** In both *Cardinal I* and *Cardinal II,* we held in part that Cardinal was not a holder as that term is defined. *Cardinal I* at ¶23; *Cardinal II* at ¶51-52*.* We held Cardinal lacked standing in part because Cardinal was not an owner of a valid interest since the

transfers violated R.C. 5301.56(H). Because Cardinal had accepted transfers of interests which did not exist in the public record, it did not acquire an interest and could not constitute a holder as that term is defined. Consequently, Cardinal suffered no injury. *Id.* at ¶ 39-41.

**{¶66}** Here, the record chain of title showed abandonment was complete before the transfers of the Jackson Interest to Ohio River occurred. Thus, consistent with the *Cardinal* cases, Ohio River, as a subsequent purchaser of record of an abandoned mineral right, lacks standing to challenge the abandonment process.

**{¶67}** Last, Ohio River contends we should reverse our prior "Cardinal cases" based on *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, which reversed the decision in *Scott-Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660 (1999). Ohio River urges us to reject our prior "Cardinal cases" as wrongly decided. Ohio River contends we confused the concepts of champerty and maintenance and erroneously held Ohio law prohibits the assignment of real property, including claims arising from that property, via quitclaim deed.

**{¶68}** Appellees claim we cannot and should not address Ohio River's arguments about champerty and maintenance since the trial court did not rely on these doctrines to conclude Ohio River lacks standing because that issue requires discovery and the development of facts. As Appellees argue, the trial court did not rely on the doctrines of champerty and maintenance. Consequently, we decline to reach the merits of Ohio River's arguments in this regard.

## Conclusion

**{¶69}** For the foregoing reasons, Ohio River's sole assigned error lacks merit. The trial court's judgment is affirmed.


Hanni, J., concurs.

Dickey, J., concurs.


Case No. 24 MO 0017

[Cite as *Ohio River Resources, L.L.C. v. Westfall*, 2025-Ohio-2379.]

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**